NATURAL RESOURCES DEFENSE
COUNCIL, INC., Petitioner,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, Respondent,

Chemical Manufacturers Association,
et al., Intervenors.

No. 81–2068.

United States Court of Appeals,
Third Circuit.

Argued Nov. 18, 1982.

Decided March 23, 1983.

Rehearing and Rehearing In Banc
Denied May 27, 1983.

Anne E. Thompson, District Judge, sitting by designation, filed a concurring opinion.

James Hunter, III, Circuit Judge, filed a concurring and dissenting opinion.

Daniel B. Edelman (argued), Washington, D.C., for petitioner.

Carl Strass (argued), Environmental Defense Section Land & Natural Resources Div., Dept. of Justice, Washington, D.C., for respondent.

John M. Cannon (argued), Chicago, Ill., for intervenor Chicago Assoc. of Commerce and Industry, et al.

* Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

Before GIBBONS, HUNTER, Circuit Judges and THOMPSON,* District Judge.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

GIBBONS, Circuit Judge.

In *NRDC v. EPA*, 683 F.2d 752 (3d Cir. 1982), the Natural Resources Defense Council (NRDC) filed a petition for review under section 509(b)(1) of the Clean Water Act, 33 U.S.C. § 1369(b)(1) (1976). NRDC sought review of the Environmental Protection Agency's (EPA's) indefinite postponement of the effective date of final amendments to certain EPA regulations. This court held that EPA's actions violated the notice and comment requirements for rulemaking under 5 U.S.C. § 553 (1976) of the Administrative Procedure Act (APA). We ordered EPA to reinstate all of the amendments effective March 30, 1981. *NRDC v. EPA*, 683 F.2d at 753.

NRDC now petitions the court for an award of counsel fees and other expenses in the amount of $34,375.85 pursuant to section 204(a) of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1976 & Supp. V 1981). Because we find that the position of EPA was not substantially justified, we will grant NRDC's fee petition.

## I. BACKGROUND

Section 307(b)(1) of the Clean Water Act mandates that EPA promulgate regulations requiring industries to meet pretreatment standards before discharging certain pollutants into publicly owned treatment works. 33 U.S.C. § 1317(b)(1) (1976 & Supp. I 1977). Pursuant to that mandate and to a consent decree, see *NRDC v. EPA*, 683 F.2d at 754 n. 6, EPA promulgated General Pretreatment Regulations for Existing and New Sources, 40 C.F.R. § 403 (1978) (the 1978 regulations), and those regulations have been in effect since August 28, 1978. 43 Fed.Reg. 27,736 (1978).

On October 29, 1979, EPA proposed a set of amendments to the 1978 regulations. After the required period of public comment, EPA promulgated those amendments in final form on January 28, 1981, to become effective on March 13, 1981. 46 Fed. Reg. 9,404 (1981).

On January 29, 1981, the President of the United States issued a memorandum ordering the federal agencies to postpone for sixty days from the date of the memorandum the effective dates of all regulations that were final but not yet effective. 3 C.F.R. § 223 (1982). In response EPA postponed the effective date of the amendments to the 1978 regulations from March 13, 1981, to March 30, 1981. 46 Fed.Reg. 11,972 (1981). NRDC raised no challenge to that postponement.

On February 17, 1981, President Reagan issued Executive Order No. 12,291, 3 C.F.R. § 127 (1982), *reprinted in* 5 U.S.C. § 601 (Supp. V 1981) (E.O. 12,291). E.O. 12,291 called for a reassessment of federal agency action in order to insure concentration only on regulatory objectives that would maximize net benefits to society. E.O. 12,291 required the federal agency to prepare a Regulatory Impact Analysis for all its major rules for review by the Office of Management and Budget.

Section 7 of E.O. 12,291 specifically addressed agency regulations which were in final form but not yet effective. Subsections (a) and (d) provided in part:

(a) To the extent necessary to permit reconsideration in accordance with this Order, agencies shall, except as provided in Section 8 of this Order, suspend or postpone the effective dates of all major rules that they have promulgated in final form as of the date of this Order, but that have not yet become effective, excluding:

(1) Major rules that cannot legally be postponed or suspended;

(2) Major rules that, for good cause, ought to become effective as final rules without reconsideration.

. . . .

. . . .

(d) Agencies may, in accordance with the Administrative Procedure Act and other applicable statutes, permit major rules that they have issued in final form as of the date of this Order, and that have not yet become effective, to take effect as interim rules while they are being reconsidered in accordance with this Order, provided that, agencies shall report to the Director, no later than 15 days before any such rule is proposed to take effect as an interim rule, that the rule should appropriately take effect as an interim rule while the rule is under reconsideration.

Exec.Order No. 12,291, 3 C.F.R. §§ 127, 131–32 (1982), *reprinted in* 5 U.S.C. § 601 (Supp. V 1981). E.O. 12,291 section 3(b) gives each agency the power to decide which of its rules are "major rules" pursuant to the definition in E.O. 12,291 section 1(b).[1] Initially EPA did not consider the amendments to be major rules, *NRDC v. EPA,* 683 F.2d at 756; however, on March 27, 1981, the Acting Administrator of EPA signed an order eliminating the March 30, 1981 effective date and instead indefinitely postponing the amendments. 46 Fed.Reg. 19,936 (1981). The Acting Administrator cited E.O. 12,291 as the sole reason for the indefinite postponement, indicating that EPA then considered the amendments to be major rules.

On June 24, 1981, NRDC filed a petition for review in the court of appeals pursuant to section 509(b)(1), 33 U.S.C. § 1369(b)(1) (1976). NRDC challenged EPA's indefinite postponement of the amendments without the notice and comment period required by the APA, 5 U.S.C. § 553 (1976).[2]

1. A "major rule" is defined in section 1(b) of E.O. 12,291 as a regulation likely to affect the economy by $100 million or more a year, cause a major increase in costs or prices, or have a significant adverse impact on competition, employment, investment, productivity, innovation, or on the capacity of United States industry to compete with foreign industry.

2. We permitted the Chemical Manufacturers' Association, American Cyanamid Company, FMC Corporation, Union Carbide Corporation, American Paper Institute, National Forest

On October 5, 1981, EPA decided to make the postponed amendments effective as of January 31, 1982. 46 Fed.Reg. 50,502 (1981). On October 13 EPA indicated that it would conduct a rulemaking proceeding on whether further to postpone the amendments beyond January 31. It gave notice and initiated a public comment period on the possibility of that postponement. 46 Fed.Reg. 50,503 (1981). EPA indicated that it had considered putting the amendments into effect immediately and then conducting the notice and comment period. It had rejected that course, however, to avoid the confusion that would result if EPA put the amendments into effect and then suspended them after notice and comment. 46 Fed. Reg. 50,502 (1981).

After EPA had reviewed the comments received, it published an order on February 1, 1982, which allowed a majority of the amendments to become effective as of January 31, 1982. 47 Fed.Reg. 4,518 (1982). It indicated, however, that four controversial amendments would be postponed until further notice pending continued analysis. 47 Fed.Reg. 4,518 (1982).

## II. *THIS COURT'S DECISION*

In addressing NRDC's challenge to the March 27, 1981 decision to postpone the amendments, we first examined EPA's and intervenors' contentions that the case was moot because EPA had subsequently established an effective date for the amendments and had held a notice and comment period before considering any further postponement. We noted that the "case may well be moot as to all of the amendments except the four which were further postponed." *NRDC v. EPA,* 683 F.2d at 759 n. 15. We concluded, however, that because we could order relief which would alter the status quo—*i.e.,* we could order reinstatement of *all* of the amendments as of March 30, 1981—the case was not moot. *Id.* at 759.[3]

Turning to the merits we first addressed the contention raised by intervenors, but not by EPA, that the postponement was not a rulemaking subject to the APA's requirements. *Id.* at 761. Because the repeal of a rule clearly constitutes rulemaking under the APA, 5 U.S.C. § 551(5) (1976), we held that an indefinite postponement, operating effectively as a repeal, also constituted rulemaking.

We next considered and rejected an argument raised by intervenors, but not by EPA, that the agency had "good cause" under 5 U.S.C. § 553(b)(B) (1976) for its failure to comply with the rulemaking requirements of the APA. *Id.* at 765–67. Although EPA stated that its March 27, 1981 postponement was pursuant to E.O. 12,291, we concluded that EPA could have complied with both the APA and E.O. 12,291. *Id.* at 765. We saw no reason why EPA could not have held a notice and comment period before its initial postponement instead of waiting until October of 1981 to do so. *Id.* at 766.

Having held that EPA's action violated the APA, we next addressed the question of a remedy. EPA contended that no remedy was required because it had cured any procedural defect in its initial postponement by establishing an effective date and then holding a notice and comment period before any further postponement. *Id.* at 767. We rejected EPA's contentions. We held that EPA's later notice and comment procedures did not cure its failure to provide them before the amendments were ever postponed. Accordingly, we remanded the case to EPA with instructions to reinstate all the amendments effective March 30, 1981. *Id.* at 769.

## III. *THE EQUAL ACCESS TO JUSTICE ACT*

NRDC now petitions the court for counsel fees and expenses incurred in the litigation

---

Products Association, Ford Motor Company, the Chicago Association of Commerce and Industry, the Illinois Manufacturers' Association and the Mid-American Legal Foundation to intervene on the side of EPA.

**3.** Ford Motor Company as intervenor also raised a jurisdictional challenge. Relying on *Consumer Energy Council of America v. Federal Energy Regulatory Comm'n,* 673 F.2d 425 (D.C.Cir.1982), we rejected Ford's argument and held that we had jurisdiction to hear the case. *NRDC v. EPA,* 683 F.2d at 759–60.

pursuant to section 2412(d)(1)(A) of the Equal Access to Justice Act (the EAJA or the Act). Section 2412(d)(1)(A) of the EAJA provides for a mandatory award of counsel fees to a qualified [4] prevailing party [5] in certain civil actions brought by or against the United States, unless the "position of the United States was substantially justified." That section is a specific statutory exception to the American rule which provides that each litigating party must assume its own counsel fees, absent a common-law exception or a contrary legislative provision. H.R.Rep.No. 1418, 96th Cong., 2nd Sess. 8–9, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4986–88 [hereinafter "House Report"].[6]

Section 2412(d)(1)(A) reads as follows:

*Except as otherwise specifically provided by statute,* a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United*

4. There is no dispute that NRDC meets the financial qualifications specified in section 2412(d)(2)(B) for a fee award pursuant to section 2412(d)(1)(A).

5. NRDC is clearly a "prevailing party." The court awarded NRDC all the relief that it requested. *NRDC v. EPA,* 683 F.2d at 769.

6. 28 U.S.C. § 2412 had previously provided only for an award of costs against the government and had specifically *excluded* an award of attorneys' fees. Section 2412(d)(1)(A) is intended as a "limited experiment" and contains a "sunset provision" repealing the section as of October 1, 1984. House Report, *supra,* at 8, 13.

7. Section 505(d) provides:
The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure. 33 U.S.C. § 1365(d) (1976).

*States was substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981) (emphasis added). Tracking the language of the statute, EPA raises two arguments against an award of fees in this case. Relying on the language "[e]xcept as otherwise specifically provided by statute," EPA argues that the EAJA is inapplicable here because the Clean Water Act contains its own fee-shifting provision which exclusively governs this action. In the alternative EPA argues that even if the EAJA applies, the court should not award fees because EPA's position was substantially justified.

*A. The Applicability of the EAJA*

■ EPA argues that the conditional language "[e]xcept as otherwise specifically provided by statute" in section 2412(d)(1)(A) renders the Equal Access to Justice Act inapplicable to an action under the Clean Water Act. Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d) (1976),[7] provides for an award of counsel fees for civil actions brought in district court pursuant to section 505(a), 33 U.S.C. § 1365(a) (1976).[8] The Clean Water Act,

8. Section 505(a) provides:
Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.
The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.
33 U.S.C. § 1365(a) (1976).

however, is silent with respect to counsel fees for the type of action involved here, a petition for review in the court of appeals pursuant to section 509(b)(1), 33 U.S.C. § 1369(b)(1) (1976).[9]

Even in the face of such silence, EPA nonetheless asks us to hold that the Clean Water Act, not the Equal Access to Justice Act, governs the award of attorneys' fees in this case. EPA reads the legislative history of the Equal Access to Justice Act to preclude its application in any case brought pursuant to a statute which somewhere contains a counsel fee provision, even if that provision is inapplicable to the case at issue.[10] We reject that reading of the legislative history.

The legislative history of the EAJA makes it clear that Congress intended not to affect cases where fees already could be awarded, but instead to make fee awards possible in additional cases when section 2412(d)(1)(A)'s requirements are met. The House Report explains that

this section is not intended to replace or supercede any existing fee-shifting statutes such as the Freedom of Information Act, the Civil Rights Acts, and the Voting Rights Act in which Congress has indicated a specific intent to encourage vigorous enforcement, or to alter the standards or the case law governing those Acts. It is intended to apply only to *cases* (other than tort cases) *where fee awards against the government are not already authorized.*

House Report, *supra,* at 18, U.S.Code Cong. & Admin.News 1980, p. 4997 (emphasis added). *See* S.Rep. No. 253, 96th Cong., 1st Sess. 10 (1979) [hereinafter "Senate Report"]. We conclude that a section 509 petition under the Clean Water Act is just such a case where Congress has not already authorized a fee award.[11]

Congress intended the EAJA to expand the potential for fee awards under certain circumstances, not to freeze the absence of counsel fee provisions in existing statutes.[12]

---

9. Section 509(b)(1) provides, in part:
   Review of the Administrator's action .... (C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title ... may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person.
   33 U.S.C. § 1369(b)(1) (1976).

10. NRDC does not request fees pursuant to section 505(d) of the Clean Water Act. To the extent that we must decide whether section 505(d) applies to this case in interpreting the language "[e]xcept as otherwise specifically provided by statute" in section 2412(d)(1)(A), we follow the decision of the court in *Montgomery Environmental Coalition v. Costle,* 646 F.2d 595 (D.C.Cir.1981). In that case the court held that the fee-shifting provision in section 505(d) of the Clean Water Act does not apply to section 509 petitions for review.

11. EPA cites comments made by Senator Kennedy on the floor of the Senate in support of its position. Senator Kennedy stated,
   In general, statutes such as the Freedom of Information Act and civil rights laws, which contain special fee-shifting provisions remain unaffected by this measure, even if the standard for awarding fees under the statute has evolved through case law and is not set out in the statute itself.

125 Cong.Rec. 21445 (1979). We read Senator Kennedy's language, however, as merely reiterating the general principle explained in the House Report and adopted in this opinion.

12. EPA analogizes the statutory scheme of the Clean Water Act to that of the Clean Air Act in attempting to preclude application of the EAJA. Both the Clean Water Act in section 505(d), 33 U.S.C. § 1365(d) (1976), and the Clean Air Act in section 304(d), 42 U.S.C. § 7604(d) (Supp. I 1977), provide for an award of attorneys' fees in suits brought in district courts. Both acts, however, were initially silent concerning attorneys' fees for petitions for review in courts of appeals. The United States Court of Appeals for the District of Columbia Circuit held that section 304(d) of the Clean Air Act did *not* provide counsel fees for petitions for review under the Clean Air Act. *NRDC v. EPA,* 512 F.2d 1351 (D.C.Cir.1975). *Contra NRDC v. EPA,* 484 F.2d 1331 (1st Cir.1973).
   Congress responded to the D.C.Circuit's opinion by amending the Clean Air Act to include a counsel fees provision covering petitions for review under that Act. 42 U.S.C. § 7607(f) (Supp. I 1977). EPA emphasizes Congress' failure similarly to amend the Clean Water Act. EPA seems to argue that Congress's failure to amend the Clean Water Act to provide counsel fees for section 509 actions precludes the application of the EAJA as well.

In this case where there is no applicable fee-shifting provision in the Clean Water Act, acceptance of EPA's reading of the EAJA would create "a no-man's land contrary to clearly expressed Congressional purposes." *Ocasio v. Schweiker,* 540 F.Supp. 1320, 1323 (S.D.N.Y.1982).[13]

We hold therefore that section 2412(d)(1)(A) of the EAJA is applicable to a petition for counsel fees incurred in a review proceeding pursuant to section 509 of the Clean Water Act. We now turn to EPA's claim that its position was substantially justified.

### B. *Definition of the Act's Terms*

■ The Equal Access to Justice Act, 28 U.S.C. § 2412(d), provides for an award of fees to the prevailing party, which NRDC unquestionably is, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). No "special circumstances" are relied upon, and thus we must determine what Congress meant when it used the terms "position" and "substantially justified."

The D.C.Circuit, however, recognized that there were two avenues available to Congress if it wished to provide counsel fees for petitions for review under the Clean Air Act. *NRDC v. EPA,* 512 F.2d at 1357. Congress could amend the Clean Air Act itself to include a fee-shifting provision covering petitions for review, *id.,* a course which Congress ultimately took in 42 U.S.C. § 7607(f) (Supp. I 1977). Alternatively, the court suggested that Congress could expand 28 U.S.C. § 2412 (1976) to include an award of attorneys' fees in addition to costs against the United States, *see supra* note 4. *Id.* Congress also eventually pursued the latter course in passing the EAJA.

Clearly the EAJA does not apply to petitions for review under the Clean Air Act, given the specific fee-shifting provision passed by Congress in 42 U.S.C. § 7607(f). We reject the notion, however, that the EAJA is inapplicable to petitions for review under the Clean Water Act. Congress' failure to amend the Clean Water Act as it amended the Clean Air Act in no way precludes the application of the EAJA to this case. *Cf. Hall v. Cole,* 412 U.S. 1, 10–11, 93 S.Ct. 1943, 1948, 36 L.Ed.2d 702 (1973) (refusal to draw negative inferences from Congressional silence in a statute where fees are

Because the Act has only been in effect since October 1, 1981 it has yet to receive much attention from appellate courts. Our decision in *Goldhaber v. Foley,* 698 F.2d 193 (3d Cir.1983), does not reach the question presented in this case. Two courts of appeals seem to have adopted the dissent's position that "position of the United States" refers to the "position of the United States taken in litigation before the courts," rather than the "position taken by an agency of the United States which made it necessary for the party to file the action." *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387 (Fed.Cir.1982); *Tyler Business Services, Inc. v. National Labor Relations Board,* 695 F.2d 73 (4th Cir.1982). *See also S & H Riggers & Erectors, Inc. v. OSHRC,* 672 F.2d 426, 431 (5th Cir. Unit B 1982) (examines litigation position). The interpretation adopted by the dissent and the *Broad Avenue, Tyler* and *Riggers* courts means that no matter how outrageously improper the agency action has been, and no matter how intransigently a wrong position has been maintained prior to the litigation, and no matter how often the same agency repeats the offending conduct, the statute has no application, so long as·employees of the Justice Department act

otherwise available under common-law exceptions to the American rule); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 389–91, 90 S.Ct. 616, 624, 24 L.Ed.2d 593 (1970) (same); *Brennan v. United Steelworkers of America,* 554 F.2d 586, 591–94 (3d Cir.1977) (same).

13. The *Ocasio* court rejected the Social Security Administrator's argument that the EAJA is inapplicable to social security cases because of the existence of a fee provision in the Social Security Act, 42 U.S.C. § 406(b)(1) (1976). Section 406(b)(1) authorizes a fee award of up to 25% of any past-due benefits awarded the client. Relying on the legislative history of the EAJA, the court concluded that section 406(b)(1) "does not authorize fee awards against the government." 540 F.Supp. at 1322. The court thus concluded that the conditional language of the EAJA does not preclude the application of the EAJA to cases involving review of decisions of the Social Security Administrator. *Id.; accord Wolverton v. Schweiker,* 533 F.Supp. 420 (D.Idaho 1982); *Berman v. Schweiker,* 531 F.Supp. 1149 (N.D.Ill.1982); *Shumate v. Harris,* 544 F.Supp. 779 (W.D.N.C. 1982) (same).

reasonably when they appear before the court. Such an interpretation ignores a defined term in the statute:

(C) "United States" includes any agency and any official of the United States acting in his or her official capacity.

28 U.S.C. § 2412(d)(2)(C). While the statute does not define "position," it does define "United States" disjunctively. Thus plainly, "position of the United States" means position taken by "any agency and any official of the United States acting in his or her official capacity." Only hostility to the underlying legislative purpose, we suggest, would permit a reading of the words "position of the United States" in isolation from the accompanying definition.

Among the trial courts, a significant number of well-reasoned opinions have held that the underlying conduct of the agency, not merely its trial conduct, must be considered. *Moholland v. Schweiker,* 546 F.Supp. 383, 386 (D.N.H.1982); *Nunes-Correia v. Haig,* 543 F.Supp. 812, 816 (D.D.C. 1982); *Wolverton v. Schweiker,* 533 F.Supp. 420, 425 (D.Idaho 1982); *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 352 (D.D.C.1982); *Gava v. United States,* No. 817–78, slip op. at 23 (Ct.Claims Tr.Div. July 20, 1982). *But see,* however, *Lauritzen v. Secretary of the Navy,* 546 F.Supp. 1221, 1226 n. 6 (C.D.Cal. 1982); *Operating Engineers Local Union No. 3 v. Bohn,* 541 F.Supp. 486, 493–96 (D.Utah 1982); *Berman v. Schweiker,* 531 F.Supp. 1149, 1154 (N.D.Ill.1982); *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 228 (D.Md.1981) (focus on litigation position). The proper interpretation of the Act is a matter of first impression in this circuit, and we should interpret it consistently with its plain meaning and the intention of Congress. We hold that the word "position" refers to the agency action which made it necessary for the party to file suit.

The statute's legislative history establishes beyond question that Congress intended that the statute provide an incentive for suits to control agency actions, not merely to make Justice Department litigators behave. There are overwhelming references to that effect and none to the contrary. *See generally* 126 Cong.Rec. H. 10213–225 (daily ed. October 1, 1980); 125 Cong.Rec. S. 10914–924 (daily ed. January 31, 1979). In Senator DeConcini's Report on the Act for the Senate Judiciary Committee he observed:

The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of proof rest with the Government. This allocation of the burden in fact, reflects a general tendency to place the burden of proof on the party who has readier access to and knowledge of the facts in 'question. The committee believes that it is far easier for the Government, *which has control of the evidence, to prove the reasonableness of its action* than it is for a private party to marshal the facts to prove that the Government was unreasonable.

Senate Report at 6 (emphasis supplied). The reference to the government having in its control evidence to prove the reasonableness of its action can have no other possible meaning than reasonableness of the agency action. That intention is evidenced further on the next page of the Senate Report:

Under existing fee-shifting statutes, the definition of prevailing party has been the subject of litigation. It is the committee's intention that the interpretation of the term in S. 265 be consistent with the law that has developed under existing statutes. Thus, the phrase "prevailing party" should not be limited to a victor only after entry of a final judgment following a full trial on the merits. *A party may be deemed prevailing if he obtains a favorable settlement of his case, Foster v. Boorstin,* 561 F.2d 340 (D.C.Cir. 1977); if the plaintiff has sought a voluntary dismissal of a groundless complaint, *Corcoran v. Columbia Broadcasting System, Inc.,* 121 F.2d 575 (9th Cir.1941); or

even if he does not ultimately prevail on all issues, *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

In cases that are litigated to conclusion, a party may be deemed "prevailing" for purposes of a fee award in a civil action prior to the losing party having exhausted its final appeal. A fee award may thus be appropriate where the party has prevailed on an interim order which was central to the case, *Parker v. Matthews,* 411 F.Supp. 1059, 1064 (D.D.C.1976), or where an interlocutory appeal is "sufficiently significant and discrete to be treated as a separate unit", *Van Hoomissen v. Xerox Corp.,* 503 F.2d 1131, 1133 (9th Cir.1974).

Senate Report at 7 (emphasis supplied). The same language appears in Congressman Kastenmeier's Report for the House Judiciary Committee. House Report at 11. If the Department of Justice offers to settle a case its litigation position cannot be faulted. But as the Senate Report makes clear, the beneficiary of the settlement may be deemed the prevailing party. The reference to settlements makes plain that "position of the United States" must have been meant to include not only the litigation position, which will more often than not be determined by the Justice Department, but also the agency position which made the lawsuit necessary. Lest there be any doubt, the Senate Report continues:

> Providing an award of fees to a prevailing party represents one way to improve citizen access to courts and administrative proceedings. When there is an opportunity to recover costs, a party does not have to choose between acquiescing to an unreasonable Government order or prevailing to his financial detriment. Thus, by allowing an award of reasonable fees and expenses against the Government when its action is not substantially justified, S. 265 provides individuals an effective legal or administrative remedy where none now exists. By allowing a decision to contest Government action to be based on the merits of the case rather

than the cost of litigating, S. 265 helps assure that administrative decisions reflect informed deliberation.

Senate Report at 7. Moreover in the section-by-section analysis of the Act in the Senate Report at 15 and the House Report at 14, U.S.Code Cong. & Admin.News 1980, p. 4993, it is noted:

> The standard and burden of proof adopted in S. 265 represents [sic] an acceptable middle ground between an automatic award of fees and the restrictive standard proposed by the Department of Justice. *It presses the agency to address the problems of abusive and harassing regulatory practices.*

(emphasis supplied). Clearly, an agency is not pressed by the Act with respect to abusive and harassing regulatory practices if those practices are not even taken into account in making a fee award.

The Congressional understanding of the meaning of "position of the United States" emerges with even greater clarity from the floor debates. When Senator Domenici introduced the Equal Access to Justice Act, S. 265, on January 31, 1979, the following colloquy between Senators Domenici and Proxmire occurred:

> MR. PROXMIRE: Does that bill provide that if a citizen brings suit against the Government and he wins, his attorneys' fees would be paid by the Government?
>
> MR. DOMENICI: If the Government could not substantiate that the *position* that it has taken, *that the citizen seeks to have overturned.*

125 Cong.Rec. S. 891 (daily ed. Jan. 31, 1979) (emphasis supplied).

The bill was discussed at length on July 31, 1979, and that discussion is replete with statements by the legislators that "position of the United States" included position taken by an agency in agency proceedings. For example:

> SENATOR NELSON: In cases such as this, if the individual or business prevails over the Government, and the Govern-

ment's action is wrong, there is no reason why the Government should not have to pay the attorney's fees and court costs of those who were injured. . . .

125 Cong.Rec. S. 10922 (daily ed. July 31, 1979).

> SENATOR KENNEDY: We can no longer tolerate a legal system under which unreasonable governmental action affecting small businesses, . . . goes unchallenged because the victims are deterred by the legal expense involved.

*Id.* S. 10933.

> SENATOR DeCONCINI: Under this bill [S. 265], . . . individuals and small businesses which prevail . . . in civil actions . . . will be able to recover their attorney fees unless the Government can show that its action was substantially justified.

*Id.* S. 10914. Throughout the debate the legislators placed clear emphasis on governmental *action,* not governmental litigation position. The pervasive theme of the debate was the goal of encouraging "little people" to challenge unreasonable actions by government bureaucrats instead of acquiescing because of the expense of a legal challenge. As Senator DeConcini explained:

> Through the device of fee-shifting, the bill attempts to overcome the financial obstacles which prevent citizens from challenging the unreasonable exercise of Government authority.

> .    .    .    .    .

> It is also intended to affirmatively encourage citizens to challenge actions which they believe to be unreasonable or irresponsible. It recognizes that those who choose to litigate an issue against the Government are not only representing their own vested interests they are also refining public policy, correcting errors on the part of the Government, and helping to define the limits of Federal authority. In short, people are serving public policy and a public purpose.

*Id.* Senator DeConcini's concern about encouraging challenges to arbitrary and unreasonable bureaucratic action was echoed by Senator Dole, who observed:

There are vast resources that enforce the arbitrary decisions of autocratic bureaucrats, but there are very few individuals or small businesses that can afford to fight back. As these rules and regulations continue to multiply, Americans grow more and more reluctant to contest regulations because of the astonishing cost of litigation. This bill seeks to create an atmosphere in which citizens are not intimidated by litigation cost. The enactment of this legislation will make it financially possible for the citizens of our Nation to question the governmental decisions.

> .    .    .    .    .

> If bureaucrats knew that more of their actions would be subjected to questions in court, I believe that the tendency of many bureaucrats to be careless, arbitrary, and irresponsible would cease.

*Id.* S. 10915. Similarly, Senator Stevens commented:

> This legislation will have a twofold benefit. In the short run, it provides individuals with a remedy which they do not now have, thereby releasing them to make decisions as to the advisability of litigation based on the merits of the case rather than the costs and, in the long run, it becomes a way to curb outlandish regulations issued by Government authority.

*Id.* Senator Dole's and Senator Stevens' concern about encouraging litigation to curb outlandish regulation was also voiced by Senator Domenici, who observed:

> This legislation would mark the beginning of a new stage. It would mark the readjustment of the tension which exists between the citizen and the Federal agencies which govern their lives. The pendulum has swung too far to the side of the bureaucracy.

> .    .    .    .    .

> The basic problem to overcome is the inability of many Americans to combat the vast resources of the Government in administrative adjudication.

> .    .    .    .    .

Today, the average American must be made to feel that he can question the exercise of the Government's discretionary power as to its reasonableness—without incurring large costs if he prevails.

Providing for award of legal fees to prevailing private litigants, except where the governmental action was substantially justified, will not deter the Government from pursuing meritorious governmental action. The purpose is to readjust the position between the Government acting in its regulatory capacity and individual rights. It is to insure against capricious and arbitrary Federal regulation.

*Id.* S. 10916. The intention to police the agencies was reiterated by Senator DeConcini, who continued:

We also, in this bill, assess the cost to the agency that loses and is charged by the court. So they are going to know each year how many of their attorneys, their regulators, have been arbitrary and caused them to go after citizens who, in turn, beat the Government and get their attorneys' fees and court costs reimbursed.

*Id.* S. 10917. Senator Thurmond put it succinctly:

The second purpose of S. 265 is to encourage the agency to be as careful as possible in the exercise of its regulatory powers and to be more responsible to citizen needs. The implicit assumption in the approach taken by this legislation is that affecting the "pocketbook" of the agency is the most direct way to assure more responsible bureaucratic behavior.

*Id.* S. 10920. Senator McClure noted:

As it now stands, Federal bureaucracies have, in effect, the power to money whip too many individuals, firms, and municipalities into submission, even when those agencies are in the wrong. The balance can be redressed to a degree if a person knows that if he is proven right, he will be reimbursed the full cost of litigation.

*Id.* S. 10921. Senator Nelson explained:

In a civil case, when an individual or small business successfully challenges an order, rule, or regulation on the merits, the Government may be required to reimburse the "victim" for attorney's fees and court costs from the agency's operating budget.

This approach has two salutary effects. First, it redresses an injustice to the victim which was caused by the Government itself. Second, it will have a chilling effect on presently unrestrained regulators who have a tendency to be careless, insensitive, arbitrary or irresponsible.

*Id.* S. 10922. Similar sentiments were expressed by Senator Goldwater, *id.* S. 10917, Senator Ford, *id.* S. 10918, Senator Bayh, *id.* S. 10923, Senator Kennedy, *id.,* and Senator Warner, *id.* S. 10924.

No legislator in either the Senate or the House said anything which suggests that the Act applies only to the government's litigation position. There is not a scintilla of legislative history that, fairly read, suggests that Congress did not mean to incorporate in the term "position of the United States" the definition that United States includes "any agency and any official of the United States acting in his or her official capacity." Indeed, the legislative history suggests overwhelmingly and unequivocally that this was precisely what Congress intended. Interpreting the Act so as to restrict application of the Act to the government's litigation position and exclude consideration of the bureaucratic action which necessitated the lawsuit would remove the very incentive which Congress unquestionably intended to provide.

The EPA relies on the fact that Congress did not impose strict liability by providing for an automatic award to the prevailing party, but instead used language, similar to that in Fed.R.Civ.P. 37, permitting a fee award against a party resisting a discovery motion unless the party's resistance is substantially justified. The substantial justification language may have been borrowed from one of the Federal Rules of Civil Procedure, but that premise lends no support for the illogical syllogism the EPA erects from it. The bill as originally drafted provided simply for a fee award to the prevailing party. Senator DeConcini explained its evolution:

The original bill introduced by my distinguished colleague from New Mexico in the 95th Congress provided for a mandatory award of fees. However, when the subcommittee held a hearing on the bill, the Department of Justice expressed concern over the bill's potential cost and its potential chilling effect on legitimate Government enforcement efforts. The Department drafted an alternative proposal which would allow fees where the Government action was "arbitrary, frivolous, unreasonable or groundless."

*Id.* S. 10914. The Justice Department position in Congress was far short of how the EPA urges this court to interpret the Act. The Justice Department's alternative proposal plainly focused on the agency action, but would have permitted an award only if that action was "arbitrary, frivolous, unreasonable or groundless." Senator DeConcini continued:

The bill we have before us represents a middle ground between the mandatory award and the Department's standard.

*Id.* The EPA would rewrite the Act not so that it represents a middle ground, but to give it a meaning that even the Justice Department never sought. *See* House Report at 15. The reason why the substantial justification language of Rule 37 was chosen was not, as the EPA illogically deduces, in order to restrict the application of the Act to litigation positions, but because, as Senator DeConcini explained:

[Rule 37] places the burden on the Government to justify its actions in order to defeat an award.

125 Cong.Rec. S. 10914. Congress was well aware that Rule 37 had just recently been amended by changing the burden to provide for fees unless opposition to a discovery motion was substantially justified, a departure from the former standard which required a finding that the opposition to discovery was unjustified. *See* 4A J. Moore, *Moore's Federal Practice* ¶ 37.02[10] at 37-49 (2d ed. 1982). Congress understood that the showing of substantial justification was required not only for a litigation position, but for a disputed agency action.

Nowhere, perhaps, is that understanding disclosed more clearly than in the remarks by Senator Kennedy, who at first had serious concerns about the legislation, but eventually supported it. He explained his change of heart, however, by noting:

First, the report makes clear that the "special circumstances" which defeat entitlement to attorneys fees, include situations where the agency advances a novel extension of the law to areas and there is insufficient legal precedent to establish the reasonableness of the agency action. As the report states, if it is a "novel but credible" application of the law to the facts at hand, then the agency would not be liable for attorneys fees.

.    .    .    .    .

As the report indicates, however, under this bill, an agency could show its decision to go forward was reasonable, without establishing that prospectively there had been a substantial probability it would win.

125 Cong.Rec. S. 10923. Thus the only senator who in the entire debate on the Act expressed any serious concerns about protecting federal agencies acknowledged that the substantial justification language applied not only to the government's litigation position, but to the agency's decision to take a position with respect to the meaning of the regulatory statute. The House Report confirms Senator Kennedy's understanding:

The standard and burden of proof adopted in S. 265 represents [sic] an acceptable middle ground between an automatic award of fees and the restrictive standard proposed by the Department of Justice. It presses the agency to address the problem of abusive and harassing regulatory practices.

House Report at 14.

Reliance on references in the House Report to the government's "decision to litigate" or "pursuing litigation" lends no support to the EPA's reading of the statute. Undoubtedly fees can be awarded on the basis that the government did not justify its litigation position. But it is a classic *non*

*sequitur* to conclude that because fees can be awarded when the government's post-complaint litigation position was not substantially justified, it follows that they cannot be awarded when its pre-complaint agency position was not justified. Thus the legislative history references relied upon simply lend no support to the dissent's position. The additional references to a discussion in the House Report of "position and actions during the course of proceedings," when placed in proper context, actually point the other way. The references plainly are to proceedings in the agency as well as in court.

### C. *Substantial Justification For EPA's Position*

■ Having decided that the conduct to examine is the agency's pre-litigation position, we must determine whether the EPA's position was substantially justified. We hold that on this record the agency has failed utterly to establish substantial justification. For its action to be substantially justified, the government must make a "strong showing" that its position was substantially justified. House Report at 16, 18. Deciding whether the agency has carried the burden of showing substantial justification for its position is in this case easy. The point at issue in this case was the agency's decision to dispense with notice and comment in rulemaking. The law was already settled that this could not lawfully be done. *Sharon Steel Corp. v. EPA,* 597 F.2d 377 (3d Cir.1979). The panel which decided the merits of this case observed that EPA's defense "circumvent[ed] *Sharon Steel* and the APA." *NRDC v. EPA,* 683 F.2d 752, 768 (3d Cir.1982). Nor could the agency possibly have believed that the repeal of a rule is not rulemaking, because the APA specifically provides that repeal of a rule is rulemaking subject to notice and comment requirements. 683 F.2d at 765. Moreover, the agency's own subsequent conduct in treating further postponement as rulemaking reveals that the EPA knew all along that its position was legally untenable. It nevertheless continued to resist reinstatement of the repealed rules, even after the lawsuit was filed. If ever a case fit precisely the mold of bureaucratic arbitrariness which one senator after another stated as the target of the Equal Access to Justice Act, this is the case.

The EPA suggests that it responded to the lawsuit in a commendable way. Caught redhanded in a violation of the law on notice and comment rulemaking, it terminated the indefinite postponement, established an effective date for the amendments, and initiated a notice and comment period before any further postponement. Nevertheless the EPA continued to insist that it was free to litigate the issue of the initial postponement. It forced the NRDC to brief and argue the case, and this court to order reinstatement of the initial regulations which the agency had illegally set aside. No fair reading of our decision in *NRDC v. EPA* can construe it as a decision substantially justifying the EPA's position.

### D. *The Fee Award*

Because we hold that the government failed to carry its burden of substantial justification for the pre-complaint position of the agency, we must address several other issues raised by the parties. These are: (1) whether fees may be awarded for time expended prior to the effective date of the Act; (2) whether the Act provides for compensation for Freedom of Information Act activity; (3) the adequacy of the affidavits supporting the fee application; and (4) the appropriate hourly rate.

■ The government contends that fees are not awardable for services performed prior to the effective date of the Act. That position is inconsistent with the plain language of the statute, which permits payment of fees in any "civil action ... which is pending on ... [the effective date, October 1, 1981]." Pub.L. No. 96–481, § 208, 94 Stat. 2330 (1980). The test is not when the services were rendered, but whether the action was pending on October 1, 1981. This action was instituted by a petition for review filed on June 24, 1981, and thus the case was pending on the effective date.

Except for one aberration, every court which has considered the question has interpreted the Act to reach services performed prior to the effective date. *See, e.g., Tyler Business Services, Inc. v. NLRB,* 695 F.2d at 77; *United States For Heydt v. Citizens State Bank,* 668 F.2d 444, 448 (8th Cir.1982); *Lauritzen v. Secretary of Navy,* 546 F.Supp. at 1224 n. 2; *Nunes-Correia v. Haig,* 543 F.Supp. at 815–16; *Wolverton v. Schweiker,* 533 F.Supp. at 423; *Photo Data, Inc. v. Sawyer,* 533 F.Supp. at 350; *Berman v. Schweiker,* 531 F.Supp. at 1151; *Gava v. United States,* No. 817–78, slip op. at 7. *Cf. Commodity Futures Trading Corp. v. Rosenthal,* 537 F.Supp. 1094 (N.D.Ill.1982); *Allen v. United States,* 547 F.Supp. 357 (N.D. Ill.1982). Interpreting the Act so as to compensate, in pending cases, for services rendered before its effective date is consistent with the interpretation of similar legislation by the Supreme Court. *See Hutto v. Finney,* 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 2575 n. 23, 57 L.Ed.2d 522 (1978) (42 U.S.C. § 1988); *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 711–21, 94 S.Ct. 2006, 2016–21, 40 L.Ed.2d 476 (1974) (20 U.S.C. § 1617).

■ The government also objects to compensating NRDC for time spent in procuring information through the Freedom of Information Act, because that route to information is not conventional discovery. That position is inconsistent with the Act's definition of fees and expenses which "includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees . . . ." 28 U.S.C. § 2412(d)(2)(A) (1976 & Supp. V 1981). The Freedom of Information Act work was performed after the petition for review was filed, and may well have been more expeditious than conventional discovery, particularly in a petition for review over which this court rather than a district court had jurisdiction. Allowing compensation for such efforts is entirely consistent with the definition of fees and expenses in the Act, and with the policies which it embodies.

■ Nor are we impressed with the government's objection to the sufficiency of the attorney's supporting affidavits in support of the award requested. The agency's position seems to be, on the one hand, that the affidavit is too general, and, on the other hand, that too much time was spent in preparing it. The hours, dates, times and descriptions are included, along with affidavits from experts establishing that the hourly rates charged were below those normally charged by attorneys of comparable experience. The agency complains that some of the legal work involved preparing responses to positions raised by industry intervenors who supported its action in rescinding regulations without notice and comment. But clearly NRDC would not have been forced to address those points except for the agency's insistence on litigating. The affidavits are, in our view, in satisfactory compliance with 28 U.S.C. § 2412(d)(1)(B).

■ Finally, NRDC urges that an award in excess of $75.00 an hour is appropriate because the court should determine "that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). NRDC seeks an adjustment to $77.86 an hour because of the increased cost of living occurring since the effective date of the Act on October 1, 1981. The calculation is made on the basis of the Consumer Price Index published by the Bureau of Labor Statistics. The Act plainly delegates to the court authority to make such an adjustment, although with little guidance as to when it is appropriate. The purpose of the statute was to encourage challenges to agency action, and the cost of living adjustment provision seems designed to provide a disincentive to agencies to prolong the litigation process. The required adjustment should therefore be made.

## IV. CONCLUSION

The total award requested is $34,375.85. We will order that the NRDC's request for

reasonable attorneys' fees and expenses under 28 U.S.C. § 2412(d)(1)(A) be granted in the amount requested.

ANNE E. THOMPSON, District Judge, concurring:

I concur with the opinion of Judge Gibbons to the extent that it concludes that the reference to the "position of the United States" in the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), includes the agency action which prompted the aggrieved party to challenge governmental action. I agree with the conclusion reached by Judge Gibbons that the position of the United States in this case was not substantially justified and that NRDC's application for attorneys' fees should be granted in full. However, I file this concurring opinion because I believe that the intent of Congress in enacting the EAJA was by no means as clear as has been suggested, and because I have reached my determination through a route somewhat different than that taken by Judge Gibbons.

The statute itself is silent as to the meaning of the word "position." The legislative history does not address this issue directly, and examination of the legislative history provides no conclusive answer. *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 352 (D.D.C. 1982); *Alspach v. Dist. Dir. of Internal Revenue,* 527 F.Supp. 225, 228 (D.Md.1981) ("question is a close one"). It is apparent that the primary concern of Congress in enacting the EAJA was to provide an incentive for parties aggrieved by unreasonable governmental action to undertake litigation to vindicate their rights and those of the public, as well as to deter abusive and arbitrary *agency* action. The legislative history is replete with references to administrative abuses which Congress sought to limit through enactment of the attorneys' fees provisions.

Section 202 of the EAJA, found at 5 U.S.C.A. § 504 note (Supp.1982), describes the purposes underlying the EAJA.

(a) The Congress finds that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings.

(b) The Congress further finds that because of the greater resources and expertise of the United States the standard for an award of fees against the United States should be different from the standard governing an award against a private litigant, in certain situations.

(c) It is the purpose of this title ...

(1) to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney's fees, expert witness fees, and other costs against the United States ...

According to H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6 (1980), *reprinted in* 1980 U.S. Code Cong. & Ad.News 4984, the bill rests on the premise that certain parties "may be deterred from seeking review of ... unreasonable governmental action because of the expense involved in securing the vindication of their rights ... The purpose of the bill is to reduce the deterrents" through the attorneys' fees provisions. This will help assure "that administrative decisions reflect informed deliberation." *Id.* at 12, U.S.Code Cong. & Admin.News 1980, p. 4991.

The legislative history is not, however, susceptible of only one interpretation. As Judge Hunter points out, Congress made a number of references to the litigation position of the United States during its discussion of the substantial justification standard. "Where the government can show that its case had a reasonable basis both in law and fact, no award will be made." *Id.* at 10, U.S.Code Cong. & Admin.News 1980, p. 4989. The House Report also noted that the EAJA would hold the United States "to the same standards in litigating as private parties." *Id.* at 9, U.S.Code Cong. & Admin.News 1980, p. 4987. Similarly, the House Report indicates that the EAJA was "intended to caution agencies to carefully

evaluate their cases and not to pursue those which are weak or tenuous." *Id.* at 14, U.S.Code Cong. & Admin.News 1980, p. 4993.

At least one court has attempted to reconcile the apparently conflicting references by stating that the passages concerning the underlying agency action must be read in light of Congress' concern with governmental action in administrative or judicial enforcement proceedings, where the action is the litigation posture. *Alspach, supra,* at 228–39. It would be equally logical to assume, however, that the references to the government's litigation position should be read in light of that very same context, in which the proper focus is on the underlying governmental action.

Nowhere in the legislative history is there a clear statement of congressional intent. As this court noted in *Goldhaber v. Foley,* 698 F.2d 193, 196 (3d Cir.1983), courts have differed as to whether the government's position should be assessed at the pre-complaint or post-complaint stage. The absence of a clear statement from Congress is, of course, not uncommon. In *Broad Avenue Laundry & Tailoring v. United States,* 693 F.2d 1387, 1390–91 (Fed.Cir.1982), the court noted 28 U.S.C. § 2412(d)(3), in which Congress specifically dealt with the position of the United States in administrative proceedings. The court concluded that when Congress intended the court to consider the position of the United States before an agency, it knew precisely how to do so. Thus, the court found that the failure of Congress to include similar language in section 2412(d)(1)(A) was strong evidence that Congress did not intend the latter section to cover the agency position. *Id.* at 1391. This is not conclusive. Congress was not in that context concerned with the "position" of the United States in a civil action before the Court of Appeals. A review of the legislative history indicates that Congress never fully contemplated a situation such as that before this court in which the government's litigation position consisted essentially of an apology for its administrative action forcing this litigation. For the following reasons, I conclude that the purposes underlying the EAJA would best be effected by examining both the government's position at the administrative level which prompted a party to make the decision to litigate and the government's position during the litigation. Under this standard, fees would be awarded to a prevailing party to the extent that the government's action in causing a party to litigate and to continue to litigate was not substantially justified. Thus, unless and until the government's position, starting at the agency level, is or becomes substantially justified, fees should be awarded to a prevailing party.

I agree with the position of Judge Gibbons that examination merely of the government's litigation position would mean that no matter how improper the agency conduct that caused the suit to be filed or no matter how capriciously that position was maintained prior to suit, even after substantial sums have been expended to institute suit, the government can avoid payment of any fees merely by taking corrective action or by maintaining a different, although justifiable, litigation posture. This anomalous situation would contravene the overriding concern repeatedly expressed by the Congress to remove the specter of overwhelming litigation costs from a party's determination of whether to contest unreasonable governmental conduct. *See Goldhaber, supra,* at 197. Congress considered an aggrieved party's decision to resort to the adjudicatory process to be of paramount concern in enacting the EAJA. House Report, *supra,* at 9. The EAJA was designed to assure that the *decision to contest* governmental action is based on the merits of the case rather than on the cost of litigating. *Id.* at 12. This decision would greatly be affected in an adverse manner if, after substantial sums are expended in mounting an action, the government can avoid payment of fees by, as in this case, granting most of what the party sought.[1]

---

1. The EAJA's definition of fees and expenses includes costs for expert witnesses, studies,

analyses, engineering reports, tests or projects reasonably necessary for the preparation of the

As Judge Gibbons notes, focus merely on the litigation position would effectively eviscerate Congress' clear and expressed desire to have a party who has received a settlement on favorable terms to be considered a prevailing party and to recover fees. If we follow the course suggested by the EPA, the government may voluntarily give an aggrieved party 98% of what he seeks without settling the suit and avoid payment of *any* fees if it had substantial justification for defending the remaining two percent of its action.[2]

On the other hand, examination *only* of the administrative position underlying the suit would not advance the goals of Congress in enacting the EAJA. If by taking corrective action, the government ameliorates the improprieties of its conduct after suit is filed, there would be no valid reason to award attorneys' fees against the government for defending a litigation position after that position has become substantially justified. If, in fact, the complaint in this action had become moot after EPA had taken its "corrective" action, an award of attorneys' fees for plaintiff's pursuit of this case would neither deter unreasonable agency conduct nor eliminate the obstacles to challenging such conduct.

Although not directly on point, this court's decision in *Goldhaber* is instructive. In *Goldhaber*, this court was faced with deciding whether fees should be awarded when the position of the United States was substantially justified on one claim but not on another. The court held that the position of the United States referred to the government's defense to each of the claims. 698 F.2d at 197. The court founded its holding upon the central purpose of the EAJA of eliminating any barriers to litigation challenging unreasonable governmental conduct presented by the fear of attorneys' fees. *Id.*

The court found it incongruous to deny fees to a prevailing party who defeats one unreasonable government position simply because another position of the United States was substantially justified. The court stated:

> If fees were denied to a prevailing party in such a circumstance, the purpose of the Act would be thwarted: the prevailing party who had succeeded in obtaining in substantial part all the relief sought in his complaint ... would be obliged to bear the entire burden of his attorneys' fees. The purpose of the Act, however, is to charge to the United States the expenses incurred by a prevailing party who has challenged an unreasonable position taken by the United States. Consequently, any decision requiring that all litigation expenses be borne by the prevailing party, even if the United States has prevailed in one aspect of the action, would undermine a central purpose of the Act.

*Id.*

> Conversely, the court noted that,
> it would be anomalous to charge the entire expense of litigation to the government in such a circumstance. Were we to do so, the government would bear the expense of defending even its reasonable positions. Because the Equal Access to Justice Act contemplates deterring only unreasonable government positions, this too would contravene the purposes of the Act. *The only solution consonant with the legislative intent as we discern it, is to charge the United States with the portion of the expenses attributable to its unjustifiable positions.*

*Id.* (emphasis added).

Similarly, an aggrieved party should be able to recover those fees necessary to challenge unreasonable governmental action, whether those fees are incurred in order to file a complaint or to continue the suit unless and until the government takes cor-

---

party's case. In some instances, a party may undertake the bulk of these studies or reports before suit is filed.

**2.** This concern is heightened in this case by the intervention on behalf of the EPA of a number of concerned parties which defended vigorously the agency action which led to this suit, and which position caused substantial expense to plaintiff.

rective action to make its position substantially justified. If in *Goldhaber* the government had conceded during the litigation any defense of the claim concerning the non-justifiable governmental action the clear implication of the holding is that fees would, nevertheless, be awarded for the time spent in prosecuting that portion of the suit and would still be denied concerning the other claim. In the instant case, it is clear that the position of the agency at the time the suit was filed and for a time shortly afterward was not substantially justified. Clearly, fees should be awarded NRDC for this time. The determination then should be whether, after the "corrective" action was taken, fees should, nevertheless, be awarded.

The standard of awarding fees against the United States only for those fees incurred in challenging its unreasonable positions would serve to eliminate the specter of attorneys' fees as an obstacle to challenging arbitrary governmental action while at the same time rewarding the government for taking corrective action.

With this standard in mind, I turn to the question of whether, after taking its allegedly "corrective steps" and claiming that the litigation was moot, the position of the United States was substantially justified. EPA's primary defense during the litigation was that even if its action had violated the Administrative Procedure Act, no remedy was required because it had cured any procedural defect. The panel rejected that defense, concluding that EPA's defense circumvented *Sharon Steel Corp. v. EPA,* 597 F.2d 377 (3d Cir.1979). EPA forced NRDC to brief and argue its case and the panel concluded that EPA's position was lacking. The panel ordered reinstatement of all of the amendments as of March 30, 1981. I cannot conclude that EPA's posture in this litigation had a reasonable basis in law and in fact. I do not find that its position was "novel but credible," *see* House Report, *supra,* at 11, and I believe that *Sharon* provided sufficient guidance for the EPA. Accordingly, I agree with Judge Gibbons that EPA's litigation position was not substantially justified. I would also award NRDC

fees for time spent prior to the effective date of the EAJA and for its efforts in obtaining information through the Freedom of Information Act. Finally, the fee request was appropriately documented, and properly included a cost of living adjustment. For these reasons, I concur that NRDC's application for attorney's fees should be awarded in full.

JAMES HUNTER, III, Circuit Judge, concurring and dissenting:

I concur in Judge Gibbons' holding that the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1976 & Supp. V 1981) ("EAJA") is applicable to a petition for counsel fees incurred in a review proceeding pursuant to section 509 of the Clean Water Act, 33 U.S.C. § 1369 (1976). I respectfully dissent from Judge Gibbons' holding that the term "position" refers to the agency's pre-litigation position. I also dissent from his holding that the position of EPA was not substantially justified in this case.

I would hold that in examining a petition for counsel fees pursuant to section 2412(d)(1)(A) of the EAJA, a court must look at the government's litigation position to determine whether it is substantially justified. Because I find that EPA's position was substantially justified in this case, I would deny NRDC's petition for counsel fees.

## I. *Definition of the Terms*

In determining that "the position of the United States was substantially justified," I begin by examining what Congress meant when it used the terms "position" and "substantially justified." As Judge Gibbons notes, there has been disagreement among courts construing the EAJA over whether "position" refers to the government's initial action prompting the lawsuit or whether "position" refers to the government's litigation position. All of the circuit courts which have addressed this issue, however, have concluded that the term refers to the government's litigation position. *See Broad Avenue Laundry and Tailoring v. United*

States, 693 F.2d 1387, 1390–91 (Fed.Cir. 1982); *Tyler Business Services, Inc. v. NLRB*, 695 F.2d 73, 75 (4th Cir.1982); *see also S & H Riggers & Erectors, Inc. v. OSHRC*, 672 F.2d 426, 431 (5th Cir. Unit B 1982) (examines litigation position). Numerous district courts have also examined the government's litigation position in construing section 2412(d)(1)(A) of the EAJA. *See Lauritzen v. Secretary of the Navy*, 546 F.Supp. 1221, 1226 & n. 6 (D.Cal.1982); *Operating Engineers Local Union No. 3 v. Bohn*, 541 F.Supp. 486, 493–96 (D.Utah 1982); *Berman v. Schweiker*, 531 F.Supp. 1149, 1154 (D.Ill.1982); *Alspach v. District Director of Internal Revenue*, 527 F.Supp. 225, 228–29 (D.Md.1981); *see Papson v. United States*, 82–1 USTC (CCH) ¶ 13,466 (Ct.Cl.1982); *see also Citizens Coalition for Block Grant Compliance v. City of Euclid*, 537 F.Supp. 422, 426 (D.Ohio 1982) (examining only position in litigation because parties settled before court could determine reasonableness of underlying action). *But see Moholland v. Schweiker*, 546 F.Supp. 383, 386 (D.N.H.1982) (examining underlying action); *Wolverton v. Schweiker*, 533 F.Supp. 420, 424–25 (D.Idaho 1982) (same); *Spencer v. NLRB*, 548 F.Supp. 256, 259–65 & n. 14 (D.D.C.1982) (finding substantial justification pursuant to either interpretation); *Nunes-Correia v. Haig*, 543 F.Supp. 812, 816 (D.D.C.1982) (examining both underlying action and defense position); *Photo Data, Inc. v. Sawyer*, 533 F.Supp. 348, 352 & n. 7 (D.D.C.1982) (same).

That distinction proves immaterial in many cases when the government's litigation position is simply that its underlying actions were proper. In such cases there is no difference between the position of the government before and after the lawsuit.

*Goldhaber v. Foley*, 698 F.2d 193, 196 (3d Cir.1983) (distinction only important when government changes its position); *Operating Engineers*, 541 F.Supp. at 495 (same).[1]

For example, in *Goldhaber* the Director of the Administrative Office of the United States had engaged two individuals as reporters for the bankruptcy court. Appellants in *Goldhaber* were two court reporters who had challenged the AO's action as beyond his authority and as arbitrary and capricious. The AO had defended by asserting that his action was within his authority and that it was not arbitrary and capricious. In *Goldhaber* consequently we did not have to decide how to interpret the term "position". *Goldhaber*, 698 F.2d at 196.

In this case, however, the distinction is material because EPA did not attempt in litigation to justify its initial action; it contended instead that its subsequent corrective steps either mooted the case or made the granting of a remedy unnecessary. Examining the statutory language, the purpose of the EAJA, its legislative history, and the cases construing it, I conclude that the term "position" in section 2412(d)(1)(A) is the position taken by the government in litigation.

I note at the outset that the statute itself does not define the term "position."[2] Nor does the legislative history of the EAJA contain an explicit definition. There are several references in the legislative history to government "action" which may be construed to refer to the government's initial conduct. House Report, *supra*, at 5, 10, 18. In addition Congress's purpose in enacting the EAJA was to reduce "economic deter-

---

1. There is another situation where the distinction is immaterial. The EAJA contemplates situations where a party *challenges* unreasonable government action as the plaintiff in a case, but also situations where a party *defends against* unreasonable government enforcement efforts. In the latter cases, the government is in the position of the plaintiff and the government "action" *is* its litigation position. *Alspach*, 527 F.Supp. at 228; *see, e.g., Wyandotte Savings Bank v. NLRB*, 682 F.2d 119 (6th Cir. 1982) (per curiam) (NLRB enforcement pro-

ceeding), *Donovan v. Dillingham*, 668 F.2d 1196 (11th Cir.1982), *reh'g. en banc granted*, 668 F.2d at 1199 (ERISA enforcement proceeding).

2. Judge Gibbons makes much of the Act's definition of "United States." 703 F.2d at 706–707. To me that definition merely recognizes the obvious—that the government as an entity can only take a "position," whatever the meaning of that term, through its agencies and the individuals who administer its agencies.

rents to contesting governmental action." *Id.* at 5–6, U.S.Code Cong. & Admin.News 1980, p. 4984. That purpose lends some support to looking at the government's underlying action in order to determine substantial justification.[3] Reading the legislative history in its entirety, however, I find that Congress' purpose was to strike a balance between "encouraging parties to vindicate their rights" and not stifling the exercise of "the constitutional obligation of the executive branch to see that the laws are faithfully executed." House Report, *supra,* at 10, U.S.Code Cong. & Admin.News 1980, p. 4989. *S & H Riggers,* 672 F.2d at 429–30.

To achieve that balance, Congress adopted the standard that fees would not be awarded if the "position of the United States was substantially justified."[4] That standard was intended to be an "acceptable middle ground," House Report, *supra* at 14, between an automatic award of fees to prevailing plaintiffs and an award only when the government's position was frivolous or groundless. *Id.* at 10, 14; *S & H Riggers,* 672 F.2d at 429; *Nunes-Correia v. Haig,* 543 F.Supp. at 817.

I conclude that interpreting "position" as litigation position best implements that legislative compromise. There is understandable concern that looking at the government's initial action instead of the reasonableness of the government's decision to press the issue in court would result in almost automatic fee awards to prevailing plaintiffs in many cases. *Operating Engineers,* 541 F.Supp. at 495. For example, when reviewing many agency actions, the statutory standard of review is whether the action is "arbitrary or capricious" or whether there is "substantial evidence" on the record to support the action. 5 U.S.C. § 706 (1976). It would be logically difficult to conclude that an action was "arbitrary and capricious" and then to conclude on a motion for fees that the action was "substantially justified." *Operating Engineers,* 541 F.Supp. at 495. That difficulty could result in an almost automatic award of fees in such cases, a result clearly not intended by Congress in passing the EAJA.[5]

Looking at the litigation position to determine substantial justification will still effectuate the purpose of the EAJA to reduce economic deterrents to challenging government action. It will encourage the government to avoid litigation, and correct its actions, a clear intent of the EAJA, House Report, *supra,* at 10, if it cannot raise reasonable legal arguments. Such action will reduce "the expense of correcting error on the part of the Government." Senate Report, *supra,* at 6. However, if the government does waste the resources of the

**3.** *See Moholland v. Schweiker,* 546 F.Supp. at 386 (given the purpose of the EAJA, a fee award should not depend on "the potential that the government might not comport itself with proper adversarial etiquette").

**4.** I note that Congress took the "substantial justification" standard directly from Fed.R. Civ.P. 37(a)(4). House Report, *supra,* at 13, 18. That rule allows the court to award costs and attorney's fees against the party opposing a motion to compel discovery "unless the court finds *that the opposition to the motion* was substantially justified." Fed.R.Civ.P. 37(a)(4) (emphasis added). The Notes of the Advisory Committee on Rules explain the language further, stating that the rule "provides in effect that expenses should ordinarily be awarded unless a court finds *that the losing party acted justifiably in carrying his point to court.*" Fed. R.Civ.P. 37 advisory committee notes. (emphasis added). The language of Rule 37 clearly addresses the losing party's litigation position.

In *Goldhaber,* 698 F.2d at 197 n. 5, we recognized the parallel between Rule 37 and the EAJA and consequently borrowed the apportionment provision from Rule 37 for EAJA purposes. Although the purposes of Rule 37 and the EAJA are not identical, *Operating Engineers,* 541 F.Supp. at 494, the meaning of the language in Rule 37 nonetheless gives some indication of what Congress meant when it adopted that same language in the EAJA.

**5.** The court in *Wolverton v. Schweiker,* 533 F.Supp. 420, 425 & n. 14 (D.Idaho 1982) attempted to solve the problem in "substantial evidence" cases. There the court awarded fees under the EAJA because there was *no* evidence to support an agency position. The court recognized that such cases where there was *no* evidence to support an agency decision would be rare. *Id.* at 425 n. 14. As the court in *Operating Engineers* noted, however, such an approach does nothing to solve the problem in "arbitrary and capricious" cases. *Operating Engineers,* 541 F.Supp. at 495.

prevailing party by raising defenses that have no substantial justification, the EAJA will mandate an award of fees from the government to compensate the party for the expenses incurred. *See S & H Riggers,* 672 F.2d at 429 (a "fee award is not a sanction to deter or penalize litigation but is a proper allocation of the costs of the litigation").

In addition to the language addressing the purpose of the EAJA, other language in the legislative history also supports my position.[6] First, in explaining the substantial justification standard, the House Report directs the courts to

> look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict, or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable *in pursuing the litigation.*
>
> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its *decision to litigate* was based on a substantial probability of prevailing.

House Report, *supra,* at 11, U.S.Code Cong. & Admin.News 1980, pp. 4989–4990. (emphasis added).

Second, the House Report instructs that fee awards in judicial proceedings pursuant to section 2412(d)(1)(A) should be treated "analogous to the awards authorized in adversary adjudications" at the agency level under section 203 of the EAJA, 5 U.S.C. § 504(a)(1) (Supp. V 1981). House Report, *supra,* at 17. Section 203 authorizes the

award of fees against the United States in administrative adjudications where the United States is in an adversarial role, unless the "position of the United States is substantially justified." The legislative history of the substantial justification standard in section 203 states that "[i]ts effect is to place the burden on the government to make a positive showing that its position and actions *during the course of the proceedings* were substantially justified. . . ." House Report, *supra,* at 13, U.S.Code Cong. & Admin.News 1980, p. 4992 (emphasis added). Such language clearly addresses the government's post-complaint conduct rather than the government's pre-complaint conduct.

Therefore in examining a petition for counsel fees pursuant to section 2412(d)(1)(A), I would look at the litigation position of the government in determining whether its position was substantially justified. Rather than demonstrating "hostility" to the legislative intent as Judge Gibbons suggests, 703 F.2d at 707, that approach best comports with the legislative history and with the compromise intended by Congress in enacting the EAJA.

Finally, I turn to the meaning of the term "substantially justified." The House and Senate Reports define the test as follows:

> The test of whether or not a Government action is substantially justified is *essentially one of reasonableness.* Where the Government can show that its case had a *reasonable basis both in law and fact,* no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of·proof rest with the Government.

---

**6.** Judge Gibbons boldly asserts that "[t]here is not a scintilla of legislative history," 703 F.2d at 710 to support the view that the term "position" refers to the government's litigation position. He states that there are "overwhelming references" to the contrary. *Id.* Most of those "overwhelming references", however, are merely bits and pieces of conversations on the floor and are not specifically addressed to the language of the EAJA here at issue. The specific language of the House and Senate Reports hardly provides "overwhelming" support for Judge Gibbons' interpretation. Indeed my reading of the House and Senate reports leads me to a different conclusion.

House Report, *supra,* at 10, U.S.Code Cong. & Admin.News 1980, p. 4989; Senate Report, *supra,* at 6. (emphasis added).[7]

## II. *Application of the Terms to This Case*

Applying the test of substantial justification to EPA's litigation position in this case, I would hold that EPA's position was substantially justified. To make that determination I look at the defense position offered by the government to the successful claim of the prevailing party. *Goldhaber,* 698 F.2d at 196–98. In this case NRDC was successful in its claim that EPA failed to conduct the notice and comment period required by the APA before indefinitely postponing the amendments. Brief for Petitioner at 22; *NRDC v. EPA,* 683 F.2d at 764.[8] EPA argued in response that, as a result of its corrective efforts, no remedy was required and thus the lawsuit was moot. Brief for Respondent at 11, 20.[9]

This is not a case where the government attempted "with its greater resources and expertise ... [to] coerce compliance with its position." House Report, *supra,* at 10, U.S.Code Cong. & Admin.News 1980, p. 4988. As this court noted, this is a case where EPA responded to the lawsuit in a commendable way. *NRDC v. EPA,* 683 F.2d at 768. It terminated the indefinite postponement, established an effective date for the amendments, and initiated a notice and comment period before any further postponement. After evaluating the comments received, EPA then put all but four of the amendments into effect.

We rejected EPA's defense that those corrective steps completely removed any harm that its initial postponement may have caused. However, the fact that we rejected EPA's defense should not "raise a presumption that the Government position was not substantially justified." House Report, *supra,* at 11, U.S.Code Cong. & Admin. News 1980, p. 4990; Senate Report, *supra,* at 7.

EPA's argument presented a different scenario than that presented to us in *Sharon Steel Corp. v. EPA,* 597 F.2d 377 (3d Cir.1979). In *Sharon Steel* EPA dispensed with notice and comment in promulgating a rule. After promulgation the Administrator invited comments and promised to modify the rule if the comments indicated that modification was necessary. *Id.* at 379. We held that notice and comment after a rule is promulgated is no substitute for pre-promulgation notice and comment as the APA requires. *Id.* at 381. We concluded that allowing post-promulgation notice and comment as an acceptable substitute would force the petitioner to "come hat-in-hand and run the risk that the decisionmaker is likely to resist change." *Id.*

---

**7.** Not wishing to quibble with the language that the test is "essentially one of reasonableness," I nonetheless note that the test appears to be slightly above reasonableness. The Senate Judiciary Committee refused to lighten the government's burden by refusing to change the language of the bill from "substantially justified" to "reasonably justified." Senate Report, *supra,* at 8; *see Wolverton v. Schweiker,* 533 F.Supp. at 424.

**8.** NRDC raised two other challenges to EPA's action in postponing the amendments. It alleged that EPA gave inadequate reasons for the postponement. Brief of Petitioner at 28. NRDC also alleged that EPA failed to disclose *ex parte* communications received from parties affected by the regulations. Brief of Petitioner at 33. We did not address those allegations on the merits; necessarily NRDC was not "successful" on those challenges. I therefore have no occasion to consider whether EPA's defens-

es to those challenges were substantially justified. *See Goldhaber,* 698 F.2d at 196–98.

**9.** Intervenors, but not EPA, argued that EPA was not required to conduct a notice and comment period before the initial postponement. Although EPA did not specifically disavow those arguments, they were in no way a part of EPA's defense posture. Respondent's Rebuttal to NRDC's Reply Mémorandum on Attorneys' Fees at 7–8. The EAJA instructs the court to look only to the "position of the United States," and I therefore do not consider the substantial justification of intervenors' arguments.

NRDC suggests that EPA should have conceded the illegality of its underlying action in making its mootness defense. Reply Memorandum at 11 n. 11. Such a concession, however, would not have lessened NRDC's litigation burden because NRDC still would have had to answer the arguments raised by the intervenors.

In this case, however, EPA argued that notice and comment before *further* postponement cured any procedural defect in the failure to provide notice and comment before *initial* postponement. Unlike the situation in *Sharon Steel*, EPA argued that its corrective steps had recreated the same situation as that which existed at the time of initial postponement. By establishing an effective date for the amendments, EPA had committed itself to putting the amendments into effect absent affirmative action to the contrary. EPA contended that its steps allowed NRDC to make the same arguments against postponement as NRDC could have made initially, without our concern in *Sharon Steel* that "the decisionmaker [would be] likely to resist change." *Sharon Steel*, 597 F.2d at 381.

Although we ultimately rejected EPA's defense as "circumvent[ing] *Sharon Steel* and the APA," *NRDC v. EPA,* 683 F.2d at 768, I nonetheless find that it was reasonable for EPA to have pressed that position in court.[10] *See S & H Riggers,* 672 F.2d at 431 (no fees where government raises "novel but credible extensions or interpretations of the law") (quoting House Report, *supra,* at 11).

I conclude that EPA's defense position was "reasonable both in law and fact." I accordingly conclude that EPA has met its burden of showing that its "position" was "substantially justified" within the meaning of section 2412(d)(1)(A). I therefore would deny NRDC's petition for counsel fees and expenses.[11]

10. We indicated that we might have accepted EPA's mootness defense but for the postponement of the four amendments after the October 13 notice and comment period. *NRDC v. EPA,* 683 F.2d at 759 n. 15.

11. Because I would deny a fee award in this case, I do not consider the issues which Judge Gibbons addresses in Part III(D) of his opinion.