CITIZENS FOR RESPONSIBLE
RESOURCE DEVELOPMENT,
Plaintiff,

v.

James G. WATT, Secretary of the
Interior, Defendant.

Civ. A. No. 82–530–N.

United States District Court,
M.D. Alabama, N.D.

Oct. 7, 1983.
Opinion on Fees and Expenses
Jan. 11, 1984.

L. Gilbert Kendrick, Montgomery, Ala., for plaintiff.

1. 30 *U.S.C.* § 1276(a)(1) provides, in pertinent part:

Any action of the Secretary to approve or disapprove a State program or to prepare or promulgate a federal program pursuant to this

John C. Bell, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., Alfred T. Ghiorzi, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION

HOBBS, District Judge.

This cause is now before the Court on the parties' cross-motions for summary judgment. The Alabama Surface Mining Commission has filed an amicus curiae brief in support of defendant's position. This action involves a challenge to defendant's approval of the Alabama Surface Mining Control and Reclamation Act of 1981, *Ala.Code* §§ 9–16–70, *et seq.* (Cum.Supp. 1982). Jurisdiction is vested in this Court to review the Secretary of Interior's approval of the Alabama program by virtue of 30 U.S.C. § 1276(a)(1).[1] Plaintiff raises nine specific objections to the Secretary's approval of the Alabama program. For the reasons stated herein, the Court denies in part and grants in part the parties' cross-motions for summary judgment.

## BACKGROUND

The Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 *et seq.*, (hereinafter referred to as the SMCRA); was passed pursuant to Congressional findings that many surface coal mining operations adversely affected the national welfare by

> destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural, and forestry purposes, by causing erosions and landslides, by contributing to floods, by polluting the water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, ... and by counteracting governmental programs and efforts to conserve soil, water, and other natural resources.

Chapter shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue.

30 U.S.C. § 1201(c). Despite these and other undesirable effects that were found to be inherent in surface coal mining, Congress also found that surface coal mining was essential in order for this nation to meet its expanding energy needs. 30 U.S.C. § 1201(b). The SMCRA was enacted to advance simultaneously both of these national goals, recognizing that these goals are often at fundamental loggerheads with one another.

In addition, Congress declared that the primary responsibility for developing, implementing, and enforcing surface mining regulations should rest with the states "because of the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations...." 30 U.S.C. § 1201(f). Consequently, the SMCRA authorizes each state to formulate its own proposed regulatory program and submit it to the Secretary of Interior for his approval. 30 U.S.C. § 1253. The Secretary of Interior is empowered to approve the state program "if he finds it capable of carrying out the exacting provisions of the Act, and consistent with his own regulations." *In re Permanent Surface Mining Regulation Litigation*, 653 F.2d 514, 516 (D.C.Cir.), *cert. denied*, 454 U.S. 822, 102 S.Ct. 106, 70 L.Ed.2d 93 (1981), *citing* 30 U.S.C. § 1253. Section 503(a)(1) directs the Secretary to examine the proposed state program and ensure that its provisions are in accordance with the requirements of the SMCRA. 30 U.S.C. § 1253(a)(1). The Secretary has determined that the phrase "in accordance with" in section 1253(a)(1) should be interpreted as requiring the state provision to be "no less stringent than, meet the minimum requirements of and include all applicable provisions of the Surface Mining Control and Reclamation Act." 30 C.F.R. 730.5 (1981).

In 1980 Alabama submitted its permanent regulatory program to the Secretary for review. On October 16, 1980, the Secretary announced his disapproval of the Alabama program and specified the reasons for disapproval. On January 11, 1982, the State submitted its revised program for consideration. After a period of public comment and other administrative proceedings, the Secretary conditionally approved the Alabama program on May 20, 1982. *See* Alabama Surface Mining Control and Reclamation Act of 1981, (hereinafter referred to as ASMCRA), codified at *Ala. Code* §§ 9–16–70, *et seq.* (Cum.Supp.1982).

## STANDARD OF REVIEW

Congress, in section 526(a)(1) of the SMCRA, clearly enunciated the standard by which this Court must review the Secretary's approval of the ASMCRA. "Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is *arbitrary, capricious, or otherwise inconsistent with law.*" 30 U.S.C. § 1276(a)(1). In construing similar statutory language found in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), the Supreme Court observed:

> Scrutiny of the facts does not end, however, with the determination that the Secretary has acted within the scope of his statutory authority. Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..." To make this finding the court must consider whether the decision was based on the relevant factors and whether there has been a clear error of judgment ... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

## FINDINGS OF THE SECRETARY WHICH PLAINTIFF CONTENDS WERE ARBITRARY, CAPRICIOUS, OR OTHERWISE INCONSISTENT WITH LAW.

FIRST CHALLENGE: *Location of the Bond Release Public Hearing*

■ Plaintiff asserts that *Ala.Code* § 9–16–89(k) (Cum.Supp.1982), which establish-

es that a bond release public hearing may be held at the objector's option in the area of the surface mining activity or at the location of the *Regulatory Authority*, is not in accordance with the pertinent provisions of the SMCRA. More precisely, plaintiff alleges that the SMCRA allows the objector the option of prosecuting his grievance either in the area of the surface mining activity or in the *state capital*, whereas the Alabama Act substitutes the location of the Regulatory Authority (Jasper) for the state capital (Montgomery) as one of the objector's two options. This Court cannot agree that the Secretary's approval of this provision of the Alabama Surface Mining Control and Reclamation Act was arbitrary, capricious, or the product of a clear error of judgment. Plaintiff would have this Court conclude that this section of the Alabama Act is "less effective" than the applicable provision in the SMCRA because it does not exactly "mirror" the federal provision. However, as defendant aptly states, the state programs need not "mirror" all provisions of the SMCRA and the corresponding regulations; rather, the states are free to formulate and implement programs which take into account the "diverse terrain, climate, biologic, chemical and physical conditions of . that particular state." *See* 30 U.S.C. § 1201(f). This Court is aware that all surface mining operations in Alabama take place in twenty-one counties in North Alabama. The Regulatory Authority, where the technical staff and documents are located, is centrally located to this surface coal mining region. The Court agrees with defendant that by substituting the location of the Regulatory Authority for the state capital, the Alabama provision enhances effective public participation.

The Court is satisfied that the Secretary did not act arbitrarily, considered the relevant factors, and properly determined that *Ala. Code* § 9–16–89(k) was in accordance with and no less effective than 30 U.S.C. § 1269(f). The Court therefore denies the petition for vacation or modification of this provision of the Alabama Act.

**SECOND CHALLENGE:** *Availability of the Hearing Transcript*

■ Plaintiff contends that the Secretary's decision approving the Alabama provisions on the availability of transcripts of bond release hearings was arbitrary, capricious, and inconsistent with the SMCRA. More precisely, plaintiff notes that the Alabama statute, *Ala. Code* § 9–16–78(a) (Cum.Supp.1982) requires the Regulatory Authority to maintain a record of testimony given at the public hearings but does not require a transcript of the record to be made unless an appeal is sought. However, plaintiff argues that the counterpart provision in the SMCRA, 30 U.S.C. § 1269(h), mandates that a "verbatim record of each public hearing required by this chapter shall be made, and a transcript made available on the motion of any party or by order of the regulatory authority." Consequently, plaintiff claims that the Alabama provision is less stringent than and does not meet the minimum requirements of 30 U.S.C. § 1269(h); therefore, the Secretary's approval of the Alabama provision was arbitrary and capricious.

In support of *Ala. Code* § 9–16–78(a) (Cum.Supp.1982) and the accompanying regulations, the Secretary found the following:

The Secretary does not find that the language differences pointed out by the commenter render Alabama's provision less effective than the Federal requirement. Although section 9 of the Alabama SMCRA specifies that transcripts will only be made available upon appeal, Alabama's implementing regulation at section 10.120 provides much greater flexibility. Here, the transcript must be made available upon appeal or at the direction of the State Regulatory Authority. This discretionary authority, which "tracks" the Federal requirements, provides for reasonable access to transcripts without appeal, while at the same time, protecting the State Regulatory Authority from having to unneces-

sarily bear the cost of transcribing some hearing records.[2] 47 Fed.Reg. 22042 (1982). The Alabama Surface Mining Commission, in its amicus curiae brief submitted to this Court, focuses the Court's attention on another provision of the ASMCRA which ensures both party and public access to the record of the bond release hearing. Section 32 of the Alabama Act, *Ala.Code* § 9–16–100 (Cum. Supp.1982), provides that "[a]ny record, report, or information required to be submitted to the regulatory authority by a licensee or permittee pursuant to this article *shall* be available to the public, ...."

The Court finds that the Secretary's approval was rational and not arbitrary and capricious. Essential to this ruling is the recognition that the Alabama provisions read in totality afford the parties and the public access to the record of the bond release hearing in a manner that is in accordance with SMCRA. The plaintiff seeks but this Court will not grant a wooden application of 30 U.S.C. § 1269(h) to the bond release hearing proceedings before the State Regulatory Authority, especially in view of the disagreement between the parties as to the actual requirements of 30 U.S.C. § 1269(h).[3] Plaintiff is reminded that Congress did not intend that the state laws and regulations exactly *mirror* their federal counterparts; rather, the state laws and regulations must be in accordance with the federal law.

THIRD CHALLENGE: *Exemption from Approximate Original Contour.*

■ Plaintiff next challenges the Secretary's approval of Alabama Regulation 817.101, especially the provision which allows the State Regulatory Authority limited power to exempt operators from the requirement of redistributing spoil in order to attain the approximate original contour at surface areas disturbed by underground mining activities. Plaintiff contends that such an exemption is repugnant to and not in compliance with 30 C.F.R. 817.101, which requires that surface areas disturbed by underground mining activities be returned to their approximate original contour. Defendant justifies the Secretary's decision to approve the Alabama regulation by relying principally on the decision in *In re Permanent Surface Mining Regulation Litigation*, Civil Action No. 79–1144 (D.D.C. 1980). There, the Secretary asserted what is plaintiff's position here—that the federal regulations required mining operators to restore to approximate original contour surface mining areas affected by underground mines. The petitioner, a mining company, argued that it was nonsensical to regrade land to its approximate original contour when that contour may have been altered by the twenty-five to forty intervening years. Petitioner urged some "flexibility in the application of the approximate original contour requirements to account for the differences between surface and underground mining operations." *See* Defendant's Brief at 13. The court ruled that the SMCRA required the restoration of the mining lands to their approximate original contour; however, the court further observed that 30 U.S.C. § 1266(b)(10), which applied this standard to underground mining, contains the following admonition:

> [T]he Secretary shall make such modifications in the requirements imposed by this subparagraph as are necessary to accommodate the distinct difference between surface and underground coal mining.

*In re Permanent Surface Mining Regulation Litigation*, Civil Action No. 79–1144,

---

2. The plaintiff expressed concern that the Alabama regulation places discretion in the Regulatory Authority to grant or deny a party's access to the hearing transcript. Plaintiff fears that such discretion could be abused to deny a party a transcript. Any such abuse of discretion would not be tolerated, and it is difficult to conceive of any Regulatory Authority attempting to deny a party access to the hearing transcript.

3. Defendant insists that 30 *U.S.C.* § 1269(h) does not *require* the Regulatory Authority to grant *all* requests for hearing transcripts; on the other hand, plaintiff argues that this provision does mandate that the Regulatory Authority grant *all* requests. The Court does not resolve this difference because it is not essential to its decision to do so.

at 18 (D.D.C.1980). Based upon this statutory directive, the court ruled:

> One distinct difference between surface and underground mines concerns the length of their duration. An underground mine may remain active up to forty years. Surface disturbances thereby become settled and revegetated. In this situation, it is duplicitous to require the removal of previously settled and revegetated land only to achieve the purpose of a second revegetation. The court therefore remands these regulations. It directs the Secretary to provide some flexibility for settled fills that have become stabilized and revegetated.

*Id.* (footnotes omitted).

This Court agrees with the rationale of the court in *In re Permanent Surface Mining Regulation Litigation, supra.* The Court holds that the Secretary's approval of the exemptions contained in Regulation 817.101 [4] was rational and not arbitrary and capricious. Moreover, the Secretary's approval of Alabama Regulation 817.101 was contingent upon Alabama's agreement to interpret 817.101 not to allow irregular or incongruent contours as a result of long-term spoil disposal. *See* 47 Fed.Reg. 22035, Finding 13.21 (1982). This action by the Secretary further confirms the Court's belief that the Secretary considered the relevant factors and acted rationally.

■ Finally, plaintiff, in its reply brief to the defendant's motion for summary judgment, argues that the Secretary's approval of Alabama Regulation 817.101 was arbitrary because he failed to consider whether 817.101 "is no less stringent than the provisions of the Surface Mining Act which require that 'the final contour of the waste accumulation be compatible with natural surroundings.' 30 U.S.C. § 1266(b)(4)." *See* Plaintiff's Reply Brief at 8. This argument lacks merit. Counsel for defendant accurately notes that Regulation 817.101 provides only a limited exemption to underground mining operations from the requirement that settled fills be restored to approximate original contour. It should not be interpreted as a limitation on other performance standards required by the federal laws and regulations, and this Court does not construe the Secretary's approval as an indorsement of such an interpretation. Moreover, the particular federal provision that plaintiff alleges the Secretary failed to consider when approving Alabama Regulation 817.101 has a counterpart in *Ala.Code* § 9–16–91(b)(4), which requires, *inter alia,* that "the final contour of the waste accumulation ... be compatible with natural surroundings." Therefore, plaintiff's arguments are rejected.

## FOURTH CHALLENGE: *Spoil Placement on Areas not Bonded*

■ Plaintiff objects to the Secretary's approval of Alabama regulations 785.10 and 805.11(d) which allow an exemption of abandoned mine lands used for spoil placement from consideration in the performance bond amount determination. Plaintiff alludes to the Secretary's own reservations about the Alabama regulations' failure to include these abandoned mine lands used for spoil placement in the initial bonding determination. *See* 47 Fed.Reg. 22038 (1982). Plaintiff's ultimate objection to this bonding exemption is that in the event of bond forfeiture, the bond would be insufficient to reclaim both the bonded area and

---

**4.** Subsection (c) of Regulation 817.101 provides the conditions which must be met before the Regulatory Authority may grant the exemptions from restoration to approximate original contour:

> (1) The spoil or mine development waste is not located such that it is detrimental to the environment or to the health and safety of the public;
>
> (2) The spoil or mine development waste stability is demonstrated through standard geo-

technical analyses to be consistent with the backfill and grading requirements (1.3 safety factor) for material on the solid bench or fill requirements (1.5 safety factor) for material on the outer slope;

> (3) The spoil or mine development waste surface is sufficiently vegetated to prevent erosion and contribution of suspended solids from normal run-off.

the previously abandoned surface mined area used for the spoil placement. The Secretary realized these same concerns when he noted that "the State's plan might spread bond amounts too thin, resulting in less rather than more reclamation." 47 Fed.Reg. 22038 (1982). However, the Secretary observed that the State's plan contained possibilities for increased reclamation activities and thus could foster one of the essential purposes of both the SMCRA and the ASMCRA, i.e., the reclamation of mined areas left without adequate reclamation which continue in their condition to detract from the quality of the environment. *See* 30 U.S.C. § 1202(h); *Ala. Code* § 9–16–71(c) (Cum.Supp.1982). Consequently, the Secretary proposed "to allow its implementation on a controlled basis for an appropriate trial period." 47 Fed.Reg. 22038 (1982). The Secretary then formulated a number of criteria which the state plan must meet, including a submission of a proposed spoil disposal plan with the Office of Surface Mining (OSM) review and approval. Additionally, the Secretary later noted that plaintiff's concerns could be obviated "through the permit terms and conditions and a diligent inspection and enforcement program." 47 Fed.Reg. 22046, Finding 22 (1982). When Alabama agreed to the stipulations, the Secretary determined that the Alabama regulations were no less effective than the federal regulations.

Upon careful consideration of plaintiff's contentions and the obvious differences between the language of the Alabama regulations and their federal counterparts, the Court concludes that the Secretary did not act arbitrarily or capriciously in approving the Alabama program subject to the aforementioned proviso. The recognition by the Secretary of the potential problems evident in the original Alabama plan, coupled with the conditions for approval attached to the plan, leads this Court to the determination that the Secretary considered the relevant factors and reasonably found that the Alabama plan was no less stringent than the federal plan. Having satisfied itself as to the propriety of the Secretary's decision, this Court is mindful of the admonition of the Supreme Court in *Overton Park, supra,* that it *must* not substitute its judgment for the informed judgment of the agency. Therefore, plaintiff's request for vacation or modification of this provision of the Alabama program is denied.

FIFTH CHALLENGE: *Description of Proposed Post Mining Land Use in Reclamation Plan*

■ Plaintiff's next objection challenges Alabama Regulation 784.23. In order to understand the parties' contentions, it is necessary to set out the pertinent provisions of this regulation:

*Reclamation Plan post mining land uses.*

(a) Each plan shall contain a description of the proposed use, following reclamation of the land within the proposed permit area including a discussion of the utility and capacity of the reclaimed land to support a variety of alternative uses, and the relationship of the proposed use to existing land use policies and plans. This description shall explain—

. . . . .

(c) This information may be supplied through a permit revision process near the end of coal extraction.

Plaintiff asserts that this Alabama Regulation is less stringent than and not in compliance with its federal counterpart—30 U.S.C. § 1258(a) [5]—in that the Alabama provision would delay submission of the reclamation plan until near the end of the coal extraction. Plaintiff fears that such a delay could result in a meaningless review

---

5. 30 *U.S.C.* § 1258(a) provides, *inter alia:*

(a) Each reclamation plan submitted as part of a permit application pursuant to any approved State program or a federal program . . . shall include . . .

. . . . .

(3) the use which is proposed to be made of the land following reclamation, including a discussion of the utility and capacity of the reclaimed land to support a variety of alternative uses and the relationship of such use to the existing land use policies and plans, . . . .

by the Regulatory Authority of the proposed use. *See* Plaintiff's Brief at 26. Defendant seeks to allay such fears by noting that plaintiff misreads the import of Alabama Regulation 784.23. The Secretary claims:

Alabama's regulations require that a reclamation plan be filed as a part of the permit application and that the plan contain, *inter alia*, a detailed estimate of the cost of reclamation with supporting calculations and a description of measures to be used to maximize the use and conservation of the coal resource. Thus, during the permit review process, the SRA will be able, by reviewing the reclamation plan and the operations plan, to make determinations of the economic and technologic feasibility of the operation and ensure that the site will be reclaimed to the levels required by law. If during the life of the operation, ... an alternative *postmining* land use becomes available, the operator may apply for a permit revision.

47 Fed.Reg. 22046 (1982). In essence, the Secretary interprets subsection (c) of Alabama Regulation 784.23 as applying only to information relative to alternative postmining land uses. The Secretary buttresses this interpretation with the opinion in *In re Permanent Surface Mining Regulation Litigation,* Civil Action No. 79–1144, (D.D.C.1980), in which the district court construed section 515(b)(2) of the SMCRA not to require an "operator to propose an alternative use as part of the initial permit application. Instead, the operator and the regulatory authority may assume restoration of land 'to a condition capable of supporting the uses which it was capable of supporting prior to any mining, or higher or better uses.'" *Id.* at 13. *citing* 30 U.S.C. § 1265(b)(2); 47 Fed.Reg. 22046 (1982).

After consideration of plaintiff's challenge to Alabama Regulation 784.23, this Court nevertheless concludes that the Secretary's interpretation of the Regulation is rational and not arbitrary and capricious. The Court is satisfied that the Secretary addressed the relevant considerations and

articulated a reasonable basis for his position. *See* 47 Fed.Reg. 22046 (1982). The Secretary's approval of the regulation is upheld only upon a belief that the Secretary's interpretation of Regulation 784.23 is reasonable in light of *In re Permanent Surface Mining Regulation Litigation,* Civil Action No. 79–1144 (D.D.C.1980). Accordingly, the Alabama Surface Mining Commission, and the Department of the Interior in its supervisory capacity, must uphold and enforce the Regulation according to the Secretary's interpretation and ensure that such interpretation comports with the national goals of surface reclamation.

SIXTH CHALLENGE: *Partial Bond Release Prior to Topsoil Replacement*

■ Both Alabama Regulation 807.12 and its federal counterpart—30 C.F.R. 807.-12 (1981)—allow the Regulatory Authority the discretion to release sixty percent of the operator's performance bond upon completion of Reclamation Phase I. Both of these provisions are in accord with 30 U.S.C. § 1269(c), which provides:

The regulatory authority may release in whole or in part said bond or deposit if the authority is satisfied the reclamation covered by the bond or deposit or portion thereof has been accomplished as required by this chapter according to the following schedule:

(1) When the operator completes the backfilling, regrading, and drainage control of a bonded area in accordance with his approved reclamation plan, the release of 60 per centum of the bond or collateral for the applicable permit area.

However, the federal regulation promulgated pursuant to 30 U.S.C. § 1269(c)—30 C.F.R. 807.12 (1981)—applies a more stringent standard for this sixty percent bond release than is required by Alabama Regulation 807.12 or by 30 U.S.C. § 1269(c) itself. As noted earlier, federal regulation 807.12 allows the regulatory authority discretion to release sixty percent of the performance bond upon completion of Recla-

mation Phase I. However, the federal regulation defines Reclamation Phase I more stringently than the Alabama regulation or the SMCRA:

*Criteria and schedule for release of performance bond.*

. . . . .

(e) For the purposes of this part— (1) Reclamation Phase I shall be deemed to have been completed when the permittee completes backfilling, *topsoil replacement*, regrading, and drainage control in accordance with the approved reclamation plan; . . .

The Alabama regulation deletes "topsoil replacement" from Reclamation Phase I. For this reason, plaintiff contends that the Alabama regulation is "less effective" than the federal provision. Plaintiff, therefore, asserts that the Secretary's approval of this Alabama regulation was arbitrary and capricious.

In resolving this issue, a threshold problem confronting the Court is the lack of an articulated basis offered by the Secretary in approving the Alabama regulation. In answer to plaintiff's comments at the administrative proceedings that Alabama regulation 807.12(e) is less effective than federal regulation 807.12(e), the Secretary merely stated: "Alabama's program includes provisions for implementation, administration, and enforcement of a system of performance bonds and liability insurance no less effective than 30 C.F.R. Chapter VII, Subchapter J." 47 Fed.Reg. 22047 (1982). Consequently, this Court's task was charted by the Supreme Court when it proclaimed that "where there is a contemporaneous explanation of the agency decision, the validity of that action must stand or fall on the propriety of that finding. . . ." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 549, 98 S.Ct. 1197, 1214, 55 L.Ed.2d 460 (1978). Defendant seeks to buttress the Secretary's ground for approval of the Alabama regulation by noting that the Secretary has recently proposed a revision to 30 C.F.R. 807.12 (1981) which would delete the requirement that operators complete topsoil replacement before becoming eligible for partial bond release. *See* 46 Fed.Reg. 45082, 45095 (1981). Consequently, defendant argues that "[i]t would serve no useful purpose to require Alabama to provide for topsoil replacement for partial bond release at the very time that the Secretary is considering deleting that provision of the regulations." *See* Defendant's Brief at 23, n. 1. However, this argument overlooks the Secretary's own position concerning the propriety of relying upon proposed regulations instead of current regulations.

The Secretary cannot agree with the comment that it is unwise policy to require the State to promulgate regulations consistent with a current Federal regulation when a less stringent regulation is being proposed. State regulations . . . must meet the "no less effective than" criteria as applied to current Federal regulations. The Secretary further concludes that simply because a regulation is proposed to be changed it is not automatically as effective as a current regulation toward meeting the intent of the SMCRA. Public comments could indeed reflect that the proposed regulation did not satisfy the intent of the SMCRA and could likewise necessitate a substantial change in such proposed regulation.

47 Fed.Reg. 22052 (1982). *See* 47 Fed.Reg. 22053 (1982).

After careful examination of plaintiff's and defendant's arguments, this Court concludes that the Secretary's determination that Alabama Regulation 807.12 is as effective as 30 C.F.R. 807.12, despite the fact that the Alabama Regulation omitted from Reclamation Phase I the requirement of topsoil replacement, was arbitrary and capricious in that it failed to articulate any logical explanation for the omission of "topsoil replacement" in the Alabama regulation. Accordingly, the Secretary's approval of Alabama Regulation 807.12 is vacated and remanded to him for action not inconsistent with this opinion.

SEVENTH CHALLENGE: *Weekly Inspections*

■ Plaintiff challenges the Secretary's approval of Alabama regulations 806.-12(e)(5)(iii) and 806.12(f)(8)(vi)(c) on the ground that the Alabama regulations do not provide for weekly inspections during a period when the permittee is without bond coverage. The federal counterparts to these two regulations—30 C.F.R. 806.-12(e)(6)(iii) and 30 C.F.R. 806.12(g)(7)(iii)—require weekly inspections during such time.

The only response by the Secretary to plaintiff's objections was his general articulation that "Alabama has fully enacted regulations which, except for minor deficiencies discussed in the Findings, are no less effective than 30 C.F.R. Chapter VII ..." 47 Fed.Reg. 22031, Finding 7 (1982). Defendant has attempted to justify the Secretary's decision by arguing that plaintiff has ignored the overall bonding scheme of Alabama's program. First, defendant proclaims that the Alabama law allows a permittee only sixty days to obtain a replacement bond in the event of the incapacity of its surety. *See Alabama Regulation* 806.-12(e)(5)(iii). He correctly notes that federal law allows the permittee ninety days to obtain a replacement bond. *See* 30 C.F.R. 806.12(e)(6)(iii). Next, defendant observes that Alabama law and regulations require at least a partial inspection of all surface mining activities no less than once a month and a complete inspection at least quarterly. *See Ala.Code* § 9–16–92(b) (Cum.Supp. 1982); *Alabama Regulation* 842.11(a). Finally, defendant focuses the Court's attention on the Alabama regulation which provides that an inspection may be requested by any person who is or may be adversely affected by a surface mining activity. *See Alabama Regulation* 842.12. From these safeguards incorporated into the Alabama laws and regulations, respondent concludes that the Secretary was reasonable in approving the Alabama regulations in question—806.12(e)(5)(iii) and 806.12(f)(8)(vi)(c)—

despite the fact that neither contained the federal requirement of weekly inspections. However, as plaintiff correctly points out, all but one of the provisions upon which defendant relies are also found in the federal statute and its regulations.[6] Consequently, it would be erroneous to rely upon these other safeguards as a justification for the omission of weekly inspections. It seems clear to this Court that the Secretary cannot validate his approval of the Alabama regulations in question by relying on inspection procedures found in other sections of the Alabama laws and regulations when those other inspection procedures are already mandated by the SMCRA and its regulations.

This Court is also unpersuaded that because Alabama Regulation 806.12(e)(5)(iii) allows the permittee only sixty days to obtain a replacement bond while 30 C.F.R. 806.12(e)(6)(iii) allows ninety days, the need for weekly inspections no longer exists. The Court concludes that there is no basis for approving a once a month inspection scheme under the Alabama plan when the federal law unequivocally mandates once a week inspections. Therefore, the Secretary's approval of these regulations is vacated and the proceedings remanded to him for action not inconsistent with this opinion.

EIGHTH CHALLENGE: *Designation of Appropriate State Environmental Agency*

■ Plaintiff challenges the Secretary's approval of Alabama Regulation 785.-16(c)(4) on the ground that it makes no reference to the Alabama Department of Environmental Management. Plaintiff argues that the federal counterpart to Regulation 785.16(c)(4)—30 C.F.R. 785.16(c)(4)(iii)—provides that the "appropriate state environmental agency" must approve a variance from the original contour restoration requirements for steep slope mining, whereas the Alabama regulation omits any reference to the appropriate state environmental agency. Plaintiff contends that

---

6. *See* 30 *U.S.C.* § 1267(c) (partial inspection once per month, complete inspection once per calendar quarter); 30 *C.F.R.* 842.12(a) (inspection on request of person affected).

since this particular section concerns improvements to the mining area's watershed, *see* 30 C.F.R. 785.16(c)(4), the Alabama Department of Environmental Management is the "appropriate state environmental agency." Defendant counters this contention by asserting that the Regulatory Authority, i.e., Alabama Surface Mining Commission, is the only agency that can grant a variance; therefore, it is the "appropriate state environmental agency" to which 30 C.F.R. 785.16(c)(4)(iii) makes reference.

The problem confronting the Court here is the inadequacy of the Secretary's findings which would support his determination that the Alabama Surface Mining Commission is the "appropriate state environmental agency." Counsel for defendant seeks to alleviate this inadequacy by articulating a rationale for the Secretary's decision. He proffers the following:

> Any request for a variance from AOC must include a plan which demonstrates that a variance from AOC will improve the watershed. In granting a variance the Commission is required to work closely with the Alabama Department of Environmental Management, ADEM, ..., to ensure that all water pollution control programs *and* plans meet the Federal and State water quality standards... The ASMC, as the regulatory authority, is the only State agency with the authority to approve the plan after consultation with ADEM.

*See* Defendant's Brief at 32. Irrespective of the abstract logic or illogic of such an argument, this Court considers such argument as a post-hoc rationalization which the Supreme Court in *Investment Co. Inst. v. Camp*, 401 U.S. 617, 628, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971) clearly forbade lower courts from accepting. "Where there is a contemporaneous explanation of the agency decision, the validity of that action must stand or fall on the propriety of that finding...." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 549, 98 S.Ct. 1197, 1214, 55 L.Ed.2d 460 (1978).

This Court does not dispute the Secretary's assertions that the Regulatory Authority, i.e., Alabama Surface Mining Commission, is the only agency that can ultimately approve a variance from approximate original contour. The SMCRA is consistent with that position. *See* 30 C.F.R. § 785.16(c) (1982). However, the federal regulation appears to adopt a two-tiered variance approval system. 30 C.F.R. § 785.16(c) (1982) provides in pertinent part:

> (c) The *regulatory authority* may issue a permit for surface mining activities incorporating a variance from the requirement for restoration of the affected lands to their approximate original contour only if it first finds, in writing, on the basis of a complete application, that all of the following requirements are met:
>
> . . . . .
>
> (4) The applicant has demonstrated that the watershed of lands within the proposed permit area and adjacent areas will be improved by the operations. The watershed will only be deemed approved if—
>
> . . . . .
>
> (iii) The *appropriate State environmental agency* approves the plan.

The language of this section casts a contradictory light on the Secretary's arguments that the Regulatory Authority and the "appropriate State environmental agency" are one and the same. This provision in the federal regulations establishes that the Regulatory Authority can only grant the variance after approval of the plan by the appropriate State environmental agency. Since the Alabama regulation provides only a one-tier variance approval system, it is clearly less stringent than and does not meet the minimum requirements of the applicable provisions of the SMCRA. Consequently, the Secretary's approval of the Alabama regulation based upon the record, exhibits action that is arbitrary and capricious. Accordingly, the Secretary's approval of Alabama Regulation 785.16(c)(4)

is vacated and remanded to the Secretary for action not inconsistent with this opinion.

NINTH CHALLENGE: *Coal Exploration Requirements*

 Finally, plaintiff contends that Alabama Regulations 815.11 and 815.13 are not in compliance with federal regulations 815.11 and 815.13 (found at 30 C.F.R. 815.-11 and 30 C.F.R. 815.13, respectively). Alabama Regulation 815.11 provides:

*General responsibility of persons conducting other coal exploration.*

(a) Each person who conducts coal exploration which substantially disturbs one-half acre or less *and* in which 250 tons or less of coal are removed shall file the notice of intention to explore required under Section 776.11 and shall comply with Section 815.15 of this Part.

(b) Each person who conducts coal exploration which substantially disturbs more than one-half acre and in which more than 250 tons of coal are removed in the area described by the permit from the State Regulatory Authority, shall comply with the procedures described in the exploration and reclamation operations plan approved under Section 776.12 and shall comply with Section 815.15 of this Part.[7]

Alabama Regulation 815.13 provides:

Each person who conducts coal exploration which removes more than 250 tons of coal *and* substantially disturbs more than one-half acre shall, while in the exploration area, possess a permit from the State Regulatory Authority for the activities granted under 776.12. The permit shall be available for review by authorized representatives of the State Regulatory Authority upon request.[8]

To support its position that the Alabama regulations are "less effective" than the federal regulations, plaintiff observes that the Alabama regulations, unlike the federal regulations, do not require a mining operator who substantially disturbs more than one-half acre but removes 250 tons of coal or less to file a notice of intention to explore with the State Regulatory Authority. *See* Plaintiff's Brief at 49. Additionally, plaintiff asserts that the Alabama regulations, unlike their federal counterparts, do not require a coal exploration operator who substantially disturbs one-half acre or less but removes more than 250 tons of coal to obtain a permit from the State Regulatory Authority.

The Court concludes that these arguments are unfounded. First, plaintiff fails to acknowledge that *Ala.Code* § 9–16–87 (Cum.Supp.1982) imposes the same requirements on coal exploration operators that plaintiff alleges Alabama Regulations 815.-11 and 815.13 omit. *Ala.Code* § 9–16–87 (Cum.Supp.1982) provides, in pertinent part:

(a) Coal exploration operations including the removal of coal samples for testing, assaying or other associated non-commercial purposes which substantially disturb the natural land surface may be conducted after filing a notice of intention to explore, including a description of the exploration area, the period of proposed exploration and provisions for reclamation in accordance with section 9–16–90.

⋅　　⋅　　⋅　　⋅　　⋅

(d) No operator shall affect more than one-half acre in any one location *or* remove more than 250 tons of coal pursuant to an exploration permit without the

---

7. Federal regulation 815.11 provides precisely the same requirements with two exceptions. In 815.11(a), the federal regulation substitutes "the natural land surface" for the Alabama provision of "one-half acre or less." 30 *C.F.R.* 815.11(a). Likewise, federal regulation 815.11(b) substitutes "the natural land surface" for the Alabama provision of "more than one-half acre." 30 *C.F.R.* 815.11(b).

8. Federal regulation 815.13 provides essentially the same requirements, but, again, it substitutes "the natural land surface" for the Alabama provision of "more than one-half acre." 30 *C.F.R.* 815.13.

specific written approval of the regulatory authority.

Moreover, Alabama Regulation 776.12, which is referred to in Alabama Regulations 815.11 and 815.13, mandates, *inter alia*, that "[a]ny person who intends to conduct coal exploration in which more than 250 tons of coal are to be removed *and/or* greater than one-half acre is to be disturbed shall, prior to conducting the exploration, obtain a permit from the State Regulatory Authority . . . ."

Accordingly, the Court feels that the Secretary's approval of these regulations was rational in light of the total regulatory scheme for coal exploration contained within the Alabama statute and regulations promulgated pursuant to said statute. The petition to vacate or modify the Secretary's approval is denied.

A separate order will be entered in accordance with this memorandum opinion.

## ORDER

In accordance with the attached memorandum opinion, it is

ORDERED that the cross-motions for summary judgment filed by the parties are granted in part and denied in part as follows:

(1) Plaintiff's motion for summary judgment concerning Alabama Regulation 807.-12 is granted, and to the extent that this regulation permits the completion of Reclamation Phase I without regard to whether there has been adequate topsoil replacement, enforcement will be denied and said regulation is hereby remanded to the Secretary of Interior for action not inconsistent with this opinion.

(2) Plaintiff's motion for summary judgment concerning Alabama Regulations 806.12(e)(5)(iii) and 806.12(f)(8)(vi)(c) is granted and to the extent that neither of the regulations incorporate the federal requirements of weekly inspections, enforcement will be denied and said regulations are hereby remanded to the Secretary of Interior for action not inconsistent with this opinion.

(3) Plaintiff's motion for summary judgment concerning Alabama Regulation 785.-16(c)(4) is granted and to the extent that this regulation is interpreted to designate the Alabama Surface Mining Commission as the "appropriate state environmental agency" for the purposes of granting or denying variances from original contour restoration in steep slope mining areas, enforcement will be denied and said regulation is hereby remanded to the Secretary of Interior for action not inconsistent with this opinion.

(4) In all other respects, this Court finds that the Secretary's approval of the provisions of the Alabama Surface Mining Control and Reclamation Act and its regulations that plaintiff challenges was rational and not arbitrary and capricious.

## ON FEES AND EXPENSES

On October 7, 1983, this Court entered an order denying in part and granting in part plaintiff's motion for summary judgment in the above styled cause. This cause is now before the Court on plaintiff's application for an order awarding fees and other expenses to it pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Defendant filed a memorandum in opposition to plaintiff's application, and plaintiff filed a reply memorandum in support of its previous application. For the reasons stated herein, the Court finds that plaintiff is entitled to an award of attorney's fees in the amount of $7,140.00.

## FACTS

The material facts in this cause have been sufficiently set forth in this Court's order of October 7, 1983, and will not be repeated here.

## DISCUSSION

The Equal Access to Justice Act allows the award of attorney's fees to a party who prevails in a civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances

make an award unjust." 28 U.S.C. § 2412(d). Congress passed the EAJA "to insure the vindication of rights of parties who might otherwise be precluded from the adjudicatory process due to the prohibitive costs of seeking justice." *Photo Data, Inc. v. Sawyer*, 533 F.Supp. 348, 352 n. 6 (D.D.C.1982). Congress also desired to encourage federal agencies from taking frivolous positions. *Id.* at 352 n. 7.

The Secretary raises three arguments in support of its position that an award of attorney's fees under the EAJA is inappropriate. First, the EAJA does not apply to suits brought pursuant to the Surface Mining Control and Reclamation Act (SMCRA) since that Act has its own provision for attorney's fees and expenses. Second, the plaintiff was not the prevailing party within the meaning of the EAJA. Third, the position of the Secretary on the three issues which are the subject of the application of attorney's fees was substantially justified. The Court will address each argument in turn.

## I. THE EAJA DOES NOT APPLY TO THE SURFACE MINING CONTROL AND RECLAMATION ACT.

■ The parties do not cite, nor is the Court aware of, any cases which have resolved the issue whether the EAJA applies to a suit brought pursuant to Section 526 of the SMCRA, Title 30 U.S.C. § 1276. The Secretary raises a number of arguments in support of the proposition that the EAJA has no application to this Section 526 suit. First is the Secretary's contention that since the SMCRA already contains a provision which warrants the imposition of attorney's fees [Section 520, Title 30 U.S.C. § 1270], the EAJA, by its own terms, is inapplicable. Section 2412(d)(1)(A) of the EAJA reads as follows:

*Except as otherwise specifically provided by statute*, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A) (Supp. V. 1981) (emphasis added)

The Court finds guidance in this matter from *Natural Resources Defense Council v. United States Environmental Protection Agency*, 703 F.2d 700 (3rd Cir.1983). There, the EPA argued that the conditional language—"[e]xcept as otherwise specifically provided by statute"—in Section 2412(d)(1)(A) rendered the EAJA inapplicable to an action brought under the Clean Water Act. The argument of the EPA was essentially the same as is now advanced by the Secretary, i.e., the EAJA is inapplicable "in any case brought pursuant to a statute which somewhere contains a counsel fee provision, even if that provision is inapplicable to the case at issue." *Id.* at 705. In rejecting the EPA's argument, the *NRDC* court observed: "Congress intended the EAJA to expand the potential for fee awards under certain circumstances, not to freeze the absence of counsel fee provisions in existing statutes." *Id.* The court concluded that the mere fact that an attorney's fee provision was contained in Section 505(d) (the Clean Water Act's counterpart to Section 520 of the SMCRA) did not preclude the application of the EAJA to suits brought pursuant to Section 509(b)(1) (the Clean Water Act's counterpart to Section 526 of the SMCRA).

The Court finds the *NRDC* court's reasoning persuasive and applicable to the present case. The Court also notes that a similar argument by the Secretary of Health and Human Services in disability benefits cases has been rejected by this Court as well as others. *See, e.g., Dubose v. Heckler*, Civil Action No. 82–716–N (M.D.Ala., Aug. 31, 1983) (holding that an attorney's fee provision found in Title 42 U.S.C. Section 406(b)(1) did not foreclose the award of attorney's fees for an action successfully instituted pursuant to another provision of the Act); *Watkins v. Harris,*

566 F.Supp. 493, 495–96 (E.D.Pa.1983). *See also, Environmental Defense Fund, Inc. v. EPA,* 716 F.2d 915, 918 (3rd Cir. 1983) (where the court rejected the argument by the EPA that since the Resource Conservation and Recovery Act of 1976 (RCRA), contained a specific fee-shifting provision, then the EAJA by its own terms could not apply to suits brought under a different section). In light of the foregoing principles and Congress' objective in enacting the EAJA to expand the instances where an award of attorney's fees would be appropriate, the Court holds that the EAJA is applicable to a suit brought pursuant to Section 526 of the SMCRA challenging the Secretary's approval of a state program.[1]

## II. THE PLAINTIFF IS NOT A "PRE-VAILING PARTY."

■ Next, defendant contends that plaintiff is not entitled to an award of attorney's fees because it does not qualify as a "prevailing party" within the meaning of the EAJA. In support of this position, defendant notes that plaintiff succeeded on only three of its nine challenges to the Secretary's approval of the Alabama regulatory scheme. This argument assumes that plaintiff must succeed on at least a majority of its challenges before it could be deemed a "prevailing party." The Court does not agree.

Recently, the Supreme Court examined the "prevailing party" standard under Title 42 U.S.C. § 1988. The Court held that "plaintiffs may be considered prevailing parties for attorney's fee purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Although *Hensley* concerned an interpretation of "prevailing party" under Section 1988, the Court observed that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at ——, 103 S.Ct. at 1939 n. 7. *Hensley* does not require that a litigant win all, or even a majority, of its claims to be a prevailing party. Accordingly, the Court is satisfied that plaintiff is a prevailing party for the purposes of the EAJA in that it succeeded on at least three significant issues and certainly obtained some of the relief it sought in bringing the suit. Of course, *Hensley* teaches that plaintiff is only entitled to an award of fees covering the hours expended on its successful challenges to the Secretary's decisions, and the hours spent on the unsuccessful claims will be excluded in considering the amount of a reasonable fee.

## III. THE GOVERNMENT'S POSITION WAS SUBSTANTIALLY JUSTIFIED.

■ Finally, the Government contends that even if plaintiff is a prevailing party within the meaning of the EAJA, an award of attorney's fees would still be inappropriate since the Government's position was substantially justified. Legislative history makes clear that the burden is on the Government to demonstrate that its action

---

**1.** The Secretary raises an additional argument that merits only brief mention. The Secretary advances the well-established principle that sovereign immunity prevents a court from awarding costs or fees against the United States, its agencies, and officers unless such immunity is statutorily abridged. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 267–68, 95 S.Ct. 1612, 1626–27, 44 L.Ed.2d 141 (1975). The Secretary further notes that "although Congress has enacted a general waiver of sovereign immunity with respect to most litigation costs, 28 U.S.C. § 2412 (1970), that provision does not allow recovery of attorney's fees unless they are specifically provided for in another statute."

*Cuneo v. Rumsfeld,* 553 F.2d 1360, 1363 (D.C. Cir.1977). But the *Cuneo* decision was handed down at a time when Section 2412 expressly excluded an award of attorney's fees. Section 2412 was amended on October 21, 1980 to allow courts the discretion to award attorney's fees under the proper circumstances. The legislative history of the EAJA clearly establishes that Congress intended to expand the cases where fee awards against the Government would be proper and were not already authorized by statute. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted* in 1980 U.S.Code & Ad.News 4953, 4997.

was substantially justified. *S & H Riggers & Erectors, Inc. v. Occupational Safety and Health Review Commission,* 672 F.2d 426, 430 (5th Cir.1982) (Unit B). However, this burden is not insurmountable. The test is essentially one of reasonableness. "Where the government can show that its case had a reasonable basis in law and in fact, no award will be made." *Watkins v. Harris,* 566 F.Supp. 493, 498 (E.D.Pa.1983). Likewise, the standard should not be interpreted to mean that "the Government's position was not substantially justified simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing." House Report No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4990.

Preliminarily, the Court must determine what is meant by the Government's "position." Plaintiff contends that the Court should focus on the position taken during the underlying agency proceedings and not the position taken by the Government during litigation. *See, Natural Resources Defense Council v. United States Environmental Protection Agency,* 703 F.2d 700 (3rd Cir.1983). Although plaintiff's contention has been accepted by numerous courts, see *Spencer v. NLRB,* 712 F.2d 539, 546 n. 27 (D.C.Cir.1983), the view that courts should focus on the "litigation position" taken by the Government appears to have prevailed in this Circuit. In *S & H Riggers & Erectors, Inc. v. Occupational Safety and Health Review Commission,* 672 F.2d 426 (5th Cir.1982) (Unit B), the court refused to award attorney's fees to plaintiff because the position taken by the Government on appeal was substantially justified. In so holding, the court indicated, albeit *sub silentio,* that the proper focus is on the position taken during litigation. *See also, Grand Boulevard Improvement Association v. City of Chicago,* 553 F.Supp. 1154, 1161–62 (N.D.Ill.1982). In light of the apparent view of the court in *S & H Riggers & Erectors, Inc., supra,* the Court holds

that it is the "litigation position" that must be examined to determine whether the Government has met its burden of showing substantial justification.

The Court now proceeds to examine the position taken by the Government during litigation. In all three of the successful challenges to the Secretary's approval of the Alabama program, the Court was troubled with the lack of any articulated basis for the Secretary's decision. For example, on the issue whether the Regulatory Authority was empowered to release sixty percent of the operator's performance bond prior to topsoil replacement (Plaintiff's Sixth Challenge), the Secretary merely remarked: "Alabama's program includes provisions for implementation, administration, and enforcement of a system of performance bonds and liability insurance no less effective than 30 C.F.R. Chapter VII, Subchapter J." *See* Memorandum Opinion at 440. Similar remarks were made by the Secretary as support for his decision on the issues which represented plaintiff's Seventh and Eighth challenges. *See* Memorandum Opinion at 441. In each instance, the Government during litigation sought to buttress the Secretary's scant justifications by articulating various reasons for the Secretary's decisions theretofore not advanced. In the Sixth and Seventh Challenges, the Court rejected those articulated reasons on their merits, whereas in the Eighth Challenge, the Court characterized the justifications proffered by the Government as "post-hoc rationalizations" clearly excluded from consideration by the Supreme Court in *Investment Co. Inst. v. Camp,* 401 U.S. 617, 628, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971). The question now becomes whether the Government's decision to oppose plaintiff's challenges on these three issues was substantially justified.

The principles enunciated in *Grand Boulevard Improvement Association v. City of Chicago,* 553 F.Supp. 1154 (N.D.Ill. 1982) are applicable in the present case.[2]

2. *Grand Boulevard* was actually two separate cases which, because of their related facts, were

In its opinion on the merits, the *Grand Boulevard* court found the agency's position to be arbitrary and capricious since the decision made by the agency was without support in the record. During litigation the Government had unsuccessfully attempted to buttress the agency's decision by offering additional facts, not found in the record, as an explanation for that decision. The court reiterated its rejection of these efforts by the Government to salvage the agency's decision and discussed the effect of the Government's position in litigation on an award of attorney's fees.

> [A]s we held in the opinion on the merits, "agency action may only be sustained on the rationale offered by the agency at the time the action is taken" ... The principle that agency decisions must be supported by evidence in the "record" and that the reviewing court is limited to consideration of the reasons for a decision asserted by the agency at the time of the decision is well settled... Where the government offers post-hoc rationalizations for unexplained agency decisions which, even if they were believed, could not save the agency action, we do not believe that position is reasonable.
>
> This is a case where private persons, confronted with unexplained agency actions, challenged the agency in court and won ... This is just the type of case where Congress expressed a desire to make the government liable for fees so as to discourage the defense by the government of arbitrary agency actions. The government's position ... was not substantially justified.

*Id.* at 1166 (citations omitted). This Court agrees with the reasoning in *Grand Boulevard,* and based upon that reasoning this Court holds that the Government has failed to demonstrate that its litigation position was "substantially justified."

## CONCLUSION

 Since the Court has determined that plaintiff's counsel is entitled to an

award of fees, the next question is the amount that plaintiff's counsel shall receive. Plaintiff's counsel has requested a total award of attorney's fees in the amount of $7,650.00, and defendant has not contested plaintiff's counsel's entitlement to this amount. In accordance with the teachings of *Hensley,* counsel has not requested compensation for any hours expended on the unsuccessful challenges to the Secretary's decision.

In determining the amount of an attorney's fee award, the "most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart,* —— U.S. at ——, 103 S.Ct. at 1939. However, the inquiry does not cease there. The *Hensley* court instructed district courts to consider other factors which could lead to the adjustment of the fee upward or downward. *Id.* In this regard, the Court proceeds to consider the legal memoranda submitted by the parties in light of the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

The Court makes the following specific conclusions in light of the *Johnson* factors:

(1) *Time and labor required:* The applications from plaintiff's attorney states that he has expended a total of 102 hours in representing plaintiff in this action. Excluded from this total are the hours expended on the unsuccessful challenges to the Secretary's decision. The Court accepts the figure offered by plaintiff's attorney as both accurate and reasonable.

(2) *Novelty and difficulty of the questions:* In addition to general principles of administrative law, which would be present in any occasion where a plaintiff challenges

---

consolidated for the purpose of determining whether an award of attorney's fees under the EAJA to the prevailing parties would be appropriate. It is the discussion of the second case,

*Coleman v. HUD,* 553 F.Supp. 1154 (N.D.Ill. 1982), that provides guidance to this Court in the present action.

a governmental official or agency's decision, this case also involved difficult questions of statutory construction which required extensive and thoughtful examination of the two statutes and the goals underlying each.

(3) *Skill required:* Mr. Kendrick has knowledge and experience in matters concerning environmental affairs by virtue of his previous employment with the Environmental Section of the Attorney General's office. This background was certainly helpful in presenting his client's claims.

(4) *Preclusion of other employment:* Plaintiff's attorney's representation of his client in the present case did not preclude plaintiff's attorney from accepting other employment.

(5) *Customary fee:* A fee of $70.00 per hour seems fair and reasonable given the experience and expertise of plaintiff's attorney in the area of environmental and administrative law.

(6) *Fixed or contingent fee:* There is no indication that plaintiff and its counsel proceeded in this case under a contingent fee arrangement; therefore, the Court assumes that counsel was to be compensated on a hourly basis.

(7) *Experience, reputation, and ability of the attorney:* Plaintiff's attorney demonstrated skill and ability in representing his client before this Court.

(8) *Amount involved and results obtained:* Although plaintiff was ultimately successful on only three of its nine challenges, success on the three challenges was of importance to his client.

(9) *Undesirability of the case:* The Court finds no basis for concluding that the legal community would view this as an unattractive lawsuit; therefore, the Court concludes that plaintiff's attorney will not suffer an adverse economic impact on his practice by having accepted the case.

(10) *Nature and length of the professional relationship with the client:* There is no indication that plaintiff's attorney has any relationship with plaintiff other than that pertaining to this particular lawsuit.

After examining plaintiff's application for an award of fees in light of the *Johnson* factors, the Court concludes that plaintiff's counsel is entitled to be compensated for 102 hours at the rate of $70.00 per hour for a total of $7,140.00.

A separate order will be entered in accordance with this memorandum opinion.